825 A.2d 1124

ANNE M. MCNEIL, THOMAS E. WILLIAMS, ROSEANNA SIEBERT, PAUL DIGAETANO, AND KEVIN J. O'TOOLE, PLAINTIFFS–RESPONDENTS, v. THE LEGISLATIVE APPORTIONMENT COMMISSION OF THE STATE OF NEW JERSEY, DEFENDANT–MOVANT, AND REGENA L. THOMAS, SECRETARY OF STATE OF NEW JERSEY, AND DAVID SAMSON, ATTORNEY GENERAL OF NEW JERSEY, DEFENDANTS.

March 6, 2003.

ORDER

This matter having come before the Court on an application for a stay of the judgment of the Appellate Division pending disposition of movant's appeal,

And the Court having considered the moving papers and supplemental briefs filed by the parties,

And the Court being of the view that the standards informing the grant of a stay when an issue of significant public importance is raised must include not only the traditional factors applicable to disputes between private parties but also, and most paramount, considerations of the public interest,

And the Court being satisfied that the public interest is best served and harm to the voting public best avoided by assuring certainty at this time in the 2003 electoral cycle and consequently, by maintaining the status quo,

And it appearing that since the adoption of art.IV, § 2, ¶ 3 of the New Jersey Constitution nearly forty years ago, Newark and Jersey City have been divided into at least three legislative districts each,

And it further appearing that that division constitutes the status quo in the case based on long-standing contemporaneous and practical construction of the New Jersey Constitution,

And good cause appearing;

IT IS ORDERED that the motion for a stay pending disposition of defendant's appeal is granted.

VERNIERO, J., Concurring in part and Dissenting in part.

The parties essentially do not dispute that dividing Newark and Jersey City each into three legislative districts violates the plain language of article IV, section 2 of the New Jersey Constitution. The critical issue is whether the higher authority of federal law mandates that departure from State law. In my view, that issue presents a mixed question of law and fact for which summary judgment is not appropriate. From that narrow perspective, I conclude at this juncture that both the Law Division and the Appellate Division erred in disposing of this case in summary fashion.

Accordingly, I would remand this matter to the Law Division to conduct a hearing and establish a proper evidentiary record on which that court might then base an ultimate disposition. I would retain jurisdiction and review the Law Division's determination on the merits only after an adequate record has been created. Because my intended disposition is premised on the belief that the matter is not ripe for summary judgment, I would leave the existing district lines in place for the 2003 legislative elections. For all practical purposes, those elections already have begun notwithstanding that nominating petitions are not due until next month under the applicable provision of Title 19.

Justice ALBIN joins in this opinion.

LaVECCHIA, J., Dissenting.

Movant, The Legislative Apportionment Commission of the State of New Jersey (Commission), applies for a stay of the Appellate Division judgment declaring the 2001 legislative apportionment map in violation of the New Jersey Constitution and ordering the Commission to draw a new legislative map. Because I am not persuaded that movant has established any of the necessary predicates to the equitable relief it seeks, I would deny

the stay and require the Commission to create a new legislative apportionment map as the Appellate Division directed on January 22, 2003.

When seeking the equitable relief of a stay pending appeal of a judgment, a movant must demonstrate that: (1) irreparable harm will result from enforcement of the judgment pending appeal; (2) the appeal presents a meritorious issue, and movant has a likelihood of success on the merits; and (3) assessment of the relative hardship to the parties reveals that greater harm would occur if a stay is not granted than if it were. *Crowe v. De Gioia*, 90 *N.J.* 126, 132–34, 447 *A*.2d 173 (1982).

Turning first to the assessment of irreparable harm, the Commission argues that even assuming that the Commission's 2001 legislative apportionment map is unconstitutional, that map nonetheless should be used for the 2003 cycle of elections because there is not enough time to promulgate a new apportionment scheme for the upcoming June primary elections. A stay of the Appellate Division judgment is said to be necessary to avoid chaos. In arguing that a new map cannot be readied for use in the upcoming primaries, the Commission never explains what harm it would suffer were it, even now, to be at work drafting an alternative map to have in readiness in the event this Court agrees with the Appellate Division and declares the 2001 map in violation of our Constitution. Indeed, it is obvious from this record that the Commission's work is largely performed by computer programs. The Commission does allude to a cost drain to the Commission if it had to work on an alternative map. That, however, cannot support a claim of irreparable harm. Harm is not irreparable if it can be remedied with monetary relief, or stated conversely, "[h]arm is generally considered irreparable in equity if it cannot be redressed adequately by monetary damages." *Id.* at 132–33, 447 *A*.2d 173 (citing *Hodge v. Giese*, 43 *N.J.Eq.* 342, 350, 11 *A.* 484 (Ch. 1887)).

I find the Commission's argument for a stay to be unpersuasive for two reasons. First, to the extent the hour is "late" in terms of

the election cycle, the fault in large part lies with the Commission. The Appellate Division issued its decision in this matter on January 22, 2003. *McNeil v. Legislative Apportionment Comm'n,* 357 *N.J.Super.* 74, 813 *A.*2d 1264 (App.Div.2003). Yet, the Commission has done nothing to date to comply with the Appellate Division's mandate. Instead, it voted the next day *not to comply* and to seek a stay. There is no reason why the Commission could not have prepared a plan in accordance with the mandate of the Appellate Division while it simultaneously sought to stay that mandate for the 2003 election cycle. By not doing so, the Commission itself has created in large measure the time pressure it now complains of. The Commission's position is hardly a sympathetic one for a party seeking equitable relief.

Second, turning to the argument that it is in fact too late to prepare and implement a new legislative apportionment plan for the upcoming primary elections, this Court should not ignore the amount of time that the Constitution provides for performance of this function in the first instance. And, the Court should not ignore past time periods for implementation of apportionment plans when considering the Commission's claims of unacceptable confusion and impossibility of implementation. Our Constitution presumes that even in the event of a "deadlock" of the bipartisan legislative apportionment commission requiring the appointment of an eleventh tie-breaking member, an apportionment plan can be completed within thirty days of appointment of the tie breaker. *N.J. Const.* art. IV, § 3, ¶ 1; art. IV, § 3, ¶ 2. That is not to say that thirty days are required in all circumstances; for example, in 2001, Professor Bartels was able to select and obtain certification on a plan only fifteen days after his appointment. *Page v. Bartels,* 144 *F.Supp.*2d 346, 349 (D.N.J.2001). Indeed, the "lateness" of the plan in respect of its timing in the election process did not prevent its usage in 2001: the Bartels plan was "cleared" for implementation on April 24, 2001, only two months before the scheduled primary. *Page v. Bartels,* 248 *F.*3d 175, 198 (3d Cir. 2001). Notwithstanding the Commission's delay to date in implementing the Appellate Division's order, our Constitution presumes

that there remains ample time to draw an alternative plan. If the Court were to deny this application for a stay and the Commission would begin work now, there is no reason why a plan could not be prepared in time for the 2003 election cycle. The Commission has not presented a compelling argument for irreparable harm when adherence to our constitutional mandate is at stake and the chaos and confusion that the Commission urges on us largely is caused by its own delay in disregarding the express directive of the Appellate Division.

The Commission also has not demonstrated a reasonable probability of success on the merits. Its position misapprehends the interplay between the Voting Rights Act, 42 *U.S.C.A.* § 1973, and our State Constitution. Stated simply, the Voting Rights Act's purpose is to remedy situations in which a complainant has met its burden of establishing a violation of voting rights, not to override all state law districting requirements.[1] The clear, unambiguous language of our Constitution in respect of municipal boundaries requires, in its application, that the Commission divide Newark and Jersey City into no more than two districts each. *N.J. Const.* art. IV, § 2, ¶ 3. That express mandate of our organic law must be honored unless it is impossible to comply with it and pertinent federal voting rights requirements. See *Scrimminger v. Sherwin,* 60 *N.J.* 483, 492, 291 *A.2d* 134 (1972) (holding constitutional provision proscribing division of counties inapplicable because it could not be satisfied without violating federal one-man, one-vote requirement).

The Commission here had an obligation to reapportion the legislative districts in compliance with the constitutional formula, unless that could not be accomplished without violating a federal

---

[1] A party challenging a plan under the Act bears the burden of showing: (1) that a minority group is sufficiently large and geographically compact to constitute a majority in a single-member district; (2) the minority group is politically cohesive; and (3) the white majority votes sufficiently as a bloc to enable it usually to defeat the minority's preferred candidate. [*Thornburg v. Gingles,* 478 U.S. 30, 50–51, 106 *S.Ct.* 2752, 2766–67, 92 *L.Ed.*2d 25, 46–47 (1986).]

Voting Rights Act requirement. That placed a duty on the Commission to prove the necessity to deviate from the constitutional command. Stated differently, because the Commission's 2001 plan does not comply with the State Constitution's requirement that it not divide either Newark or Jersey City into more than two legislative districts, the 2001 plan is presumptively unconstitutional and the burden of persuasion shifted to the Commission to demonstrate that it could not divide those cities into only two districts without violating federal law governing voting rights. The Commission has not done so. In response to the direct question of this Court, it states that it "cannot confidently predict today that it is impossible to place Newark and Jersey City into two districts each without running afoul of the Voting Rights Act." Thus, unlike the circumstances in *Scrimminger, supra*, where the State Constitutional provision pertaining to county boundaries had to give way in order to comply with the requirements of the rule of one-person, one-vote, impossibility is not the Commission's justification for failing to reconcile the Constitution's formula applicable to municipal boundaries with Voting Rights Act requirements.

It is not enough for the Commission to argue that similar offenses to the State Constitutional provision concerning municipal boundaries appear to have occurred in the past. No similar legal challenge to past plans was ever presented. This Court's duty, when squarely presented with the issue, is to consider and apply the Constitution's unambiguous language unless the Commission can prove that such compliance cannot be obtained without violating federal law. As noted, however, the Commission has not even alleged much less established that it is impossible to devise a plan that satisfies both federal law and the State Constitution. Absent that allegation, its plan is presumptively invalid as a matter of law. Our Constitution must yield to federal voting rights requirements, but only when there is no other way to satisfy the pertinent federal requirement. The question is whether satisfaction of the requirements of the Voting Rights Act *compels* violation of the New Jersey Constitution. *See, e.g., Matter of Legislative District-*

*ing of the State*, 370 *Md.* 312, 805 *A.*2d 292 (2002). Absent a showing that there is a paramount federal concern that cannot be remedied any other way, the Commission's departure from our Constitution's unequivocal mandate concerning the division of municipalities should be rejected.

Finally, in comparing the relative hardship of the parties, it only need be repeated that the Commission created much of its alleged "hardship" by refusing, for over a month, to comply with the order to draw a new map. Notwithstanding that unjustified delay, there appears to be sufficient time to put in place a new map that conforms with our Constitution, if the Commission moves with dispatch. Even if the Commission took thirty days to complete a map, the successfully conducted 2001 election indicates the absence of any hardship here, where there is only minimally less time.

On the other side of the balance of hardships, absent a new district map for the upcoming election, Jersey City, Newark, and the rest of this State will be forced to endure a patently unconstitutional apportionment scheme. The Commission argues that continuance of that scheme need only be tolerated for two years. That is not technically correct. The members of the Senate are being elected to a four-year term; the members of the General Assembly are being elected to a two-year term. *N.J. Const.* art. IV, § 2, ¶ 2 and ¶ 4. But even taking the Commission argument at face value, utilizing an unconstitutional plan for any election cycle is intolerable if it is possible to put a conforming plan in place. The State is not confronted with an upcoming general election. The State is in preparation for a June *primary* election that precedes, by months, the statewide election that will not occur until November. Clearly, the State has the wherewithal to adjust to the practicalities involved in resolving this constitutional issue now.

I would deny the stay.

*For granting*—Justices COLEMAN, LONG, ZAZZALI, and Judge PRESSLER (temporarily assigned)—4.

*For granting and remanding*—Justices VERNIERO and ALBIN—2.

*For denying*—Justice LaVECCHIA—1.