79 A.3d 479

GARDEN STATE EQUALITY; DANIEL WEISS; JOHN GRANT; MARSHA SHAPIRO; LOUISE WALPIN; MAUREEN KILIAN; CINDY MENEGHIN; SARAH KILIAN MENEGHIN; ERIC BRADSHAW; TEVONDA BRADSHAW; TEVERICO BRADSHAW; KAREN NICHOLSON MCFADDEN; MARCYE NICHOLSON MCFADDEN; KASEY NICHOLSON MCFADDEN; MAYA NICHOLSON MCFADDEN; THOMAS DAVIDSON; KEITH HEIMANN; MARIE HEIMANN DAVIDSON; AND GRACE HEIMANN DAVIDSON, PLAINTIFFS, v. PAULA DOW, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF NEW JERSEY; JENNIFER VELEZ, IN HER OFFICIAL CAPACITY AS COMMISSIONER OF THE NEW JERSEY DEPARTMENT OF HUMAN SERVICES; AND MARY E. O'DOWD, IN HER OFFICIAL CAPACITY AS COMMISSIONER OF THE NEW JERSEY DEPARTMENT OF HEALTH AND SENIOR SERVICES, DEFENDANTS.

Superior Court of New Jersey
Law Division Mercer County

Decided October 10, 2013.

348

Gibbons, P.C. (*Lawrence S. Lustberg* and *Benjamin Yaster,* on the brief), and *Hayley J. Gorenberg* (*Lambda Legal* ) of the New York bar, admitted pro hac vice, for plaintiffs.

*John J. Hoffman,* Acting Attorney General, attorney for defendants (*Jean P. Reilly,* Deputy Attorney General, on the brief).

JACOBSON, A.J.S.C.

## *INTRODUCTION*

On September 27, 2013, this court issued an order granting plaintiffs' motion for summary judgment ("the order"). The order directs the State of New Jersey to permit same-sex couples, who otherwise satisfy the requirements to enter into a civil marriage, to marry as of October 21, 2013. A lengthy decision on motion for summary judgment ("the decision") accompanied the order, explaining why it was issued. *Garden State Equality v. Dow,* 2013 *WL* 5397372 (Law Div.2013). On October 1, 2013, defendants ("the State") filed a notice of appeal and a motion for a stay of this court's order pending appeal, supported by an accompanying brief. Plaintiffs filed opposition on October 4, 2013, and the State filed a

reply on October 7, 2013. The parties have provided the court with over eighty-five pages of legal argument regarding this application.

This statement of reasons incorporates by reference the facts and procedural history as discussed in great detail in the decision. For the reasons explained below, the court denies the State's application to stay the effectiveness of this court's order pending further judicial review, largely because of the irreparable harm that would be caused to plaintiffs by the granting of a stay.

## DISCUSSION

Under *Rule* 2:9–5(b), if a litigant seeks a stay of an order "prior to the date of the oral argument in the appellate court or of submission to the appellate court for consideration without argument," the litigant must first file the motion for a stay in the court that entered the order. This motion for a stay is properly before this court given the procedural posture of the case.

It is well established that the standard governing whether to grant a motion for a stay is the same standard used by courts in deciding whether to grant injunctive relief, for the simple reason that a stay is a type of injunctive relief. *In re Comm'r of Ins. Deferring Certain Claim Payments by N.J. Auto. Full Ins. Underwriting Ass'n,* 256 *N.J.Super.* 553, 560, 607 *A.*2d 992 (App. Div.1992). The oft-cited case that delineates that standard is *Crowe v. De Gioia,* 90 *N.J.* 126, 139, 447 *A.*2d 173 (1982). A stay application should be granted only when: 1) such relief is necessary to prevent irreparable harm; 2) the applicant presents a settled underlying claim and makes a showing of reasonable probability of success on the merits; and 3) a balancing of the relative hardships of the parties favors granting injunctive relief because "greater harm would occur if a stay is not granted than if it were." *McNeil v. Legislative Apportionment Comm'n of N.J.,* 176 *N.J.* 484, 486, 825 *A.*2d 1124 (2003) (LaVecchia, J., dissenting) (citing *Crowe, supra,* 90 *N.J.* at 139, 447 *A.*2d 173). And, in addition to this traditional standard, the New Jersey Supreme

Court has stated that, "the standards informing the grant of a stay when an issue of significant public importance is raised must include ... most paramount, considerations of the public interest." *Id.* at 484, 825 *A.*2d 1124. Given the nature of the issues before this court, the public interest forms a critical element of the stay analysis.

## I. Irreparable Harm.

The State argues that, without a stay of the order, it will suffer irreparable harm. The State asks the court to rely on the proposition that, " '[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.' " *Maryland v. King,* ⸺ *U.S.* ⸺, ⸺, 133 *S.Ct.* 1, 3, 183 *L.Ed.*2d 667, 670 (2012) (Roberts, J., in chambers) (quoting *New Motor Vehicle Bd. v. Orrin W. Fox Co.,* 434 *U.S.* 1345, 1351, 98 *S.Ct.* 359, 363, 54 *L.Ed.*2d 439, 445 (1977) (Rehnquist, J., in chambers)). The State also cites *Coalition for Economic Equity v. Wilson,* 122 *F.*3d 718, 719 (9th Cir.1997), where the court noted that, "it is clear that a state suffers irreparable injury whenever an enactment of its people or their representatives is enjoined." In making this argument, however, the State ignores the largely abstract nature of the harm it alleges, which pales in comparison to the concrete harm caused to plaintiffs by their current ineligibility for many federal marital benefits, and the significant litigation burden they would have to shoulder to challenge federal denial of marital benefits to civil union couples.

It is axiomatic that injunctive relief "should not be entered except when necessary to prevent substantial, immediate and irreparable harm." *Subcarrier Commc'n, Inc. v. Day, 299 N.J.Super.* 634, 638, 691 *A.*2d 876 (App.Div.1997). While the State suggests that enjoining a statute amounts to irreparable harm, the cases it cites for this proposition are not persuasive here. Firstly, the order did not strike down any statute, and did not enjoin the State from enforcing any existing statutes. *Garden State Equali-*

*ty*, *supra* at \*24 (noting that since plaintiffs' injuries suffered as a result of equal protection violations will be remedied by the order, there is no need for the court to pass upon the constitutionality of the Civil Union Act). Plaintiffs have never asked the court to strike down any statutory provisions, either in the complaint or in the multitude of other filings with the court. The order simply directs the State to allow same-sex couples to marry, and until any change in the parallel civil union/civil marriage structures enacted by the New Jersey Legislature is made, same-sex couples will have the choice of obtaining civil marriages, entering into civil unions, or maintaining existing civil unions. And even if the order can be interpreted to "strike down" the "statutory scheme" devised by the New Jersey Legislature, the State has found no New Jersey case to support the proposition that enjoining a state from enforcing a statute is *per se* irreparable harm. Indeed, an application filed by the State for a stay of an order invalidating a statute has been denied by a New Jersey court. *See Roman Check Cashing v. N.J. Dep't of Banking & Ins.*, 169 *N.J.* 105, 109, 777 *A.*2d 1 (2001) (noting that motion for stay of order invalidating *N.J.S.A.* § 17:15A–41(e) as unconstitutional was denied by Appellate Division). And stay applications in cases where other state actions were invalidated have also been rejected by New Jersey courts. *See In re Plan for the Abolition of the Council on Affordable Hous.*, 214 *N.J.* 444, 455, 70 *A.*3d 559 (2013) (denying State's application for stay of order invalidating Reorganization Plan No. 001–2011 issued by the Governor); Am. *Trucking Ass'ns v. State*, 180 *N.J.* 377, 383–84, 852 *A.*2d 142 (2004) (noting that Appellate Division had denied State's application for stay of order preventing State from collecting fee under regulation promulgated pursuant to *N.J.S.A.* 13:1E–18).

Finding no helpful New Jersey precedent, the State relies on federal cases to argue that a state suffers irreparable harm when statutes are enjoined. *Maryland v. King, supra*, —— *U.S.* at ——, 133 *S.Ct.* at 3, 183 *L.Ed.*2d at 670; *Coalition for Econ. Equity, supra*, 122 *F.*3d at 719. Notably, however, many other federal courts have recognized that "there can be no irreparable harm to

a [government] when it is prevented from enforcing an unconstitutional statute because 'it is always in the public interest' " to protect constitutional liberties. *Joelner v. Vill. of Washington Park*, 378 *F*.3d 613, 620 (7th Cir.2004) (quoting *Connection Distrib. Co. v. Reno*, 154 *F*.3d 281, 288 (6th Cir.1998)); *see also Nat'l Foreign Trade Council, Inc. v. Giannoulias*, 523 *F.Supp*.2d 731, 751 (N.D.Ill.2007). The *Joelner* court discussed First Amendment liberties under the United States Constitution, but the concerns expressed there are equally applicable here, where plaintiffs' rights to equal protection under the New Jersey Constitution are at stake. This court, as explained in detail in the decision, has already determined that plaintiffs are suffering irreparable injury as a result of continuing deprivations of their constitutional rights caused by the parallel civil marriage/civil union structure enacted by the New Jersey Legislature. The argument that *the State* will suffer irreparable harm from rectifying ongoing violations of Plaintiffs' civil rights under the New Jersey Constitution is simply untenable.

Finally, the State argues that it will suffer irreparable harm if even a "handful" of marriage licenses are given out to same-sex couples because it is "virtually impossible . . . to undo that action at a later date." For support, the State cites to California's experience with legalizing same-sex marriage through the courts, then having it banned by popular referendum, only to have it reinstated by the courts. *See Hollingsworth v. Perry*, —— *U.S.* ——, 133 *S.Ct.* 2652, 186 *L.Ed.*2d 768 (2013). However, the State has not explained exactly how allowing some same-sex couples to marry to assure them access to equal rights pending appellate review would cause any harm to the State, or why any eventual deprivation of that right would be ineffectual should it be ordered by an appellate court. On the contrary, the California experience teaches that marriage can be extended to same-sex couples in a state and then removed without dire consequences to the state. *Perry v. Schwarzenegger*, 704 *F.Supp*.2d 921, 928, 1003 (N.D.Cal. 2010), *rev'd on other grounds*, 671 *F*.3d 1052 (9th Cir.2012) (overturning California's ban on same-sex marriage, enacted through

referendum after it had already been legalized by the courts, and finding that "California is able to issue marriage licenses to same-sex couples, as it has already issued 18,000 marriage licenses to samesex [sic] couples [in the four and a half months when marriage was legalized before Proposition 8 was passed] and has not suffered any demonstrated harm as a result").

Civil marriage is a widespread institution that is authorized by statute and is administratively well established. *See N.J.S.A.* 37:1–2 to –12.3. The State has not pointed to any administrative burden caused by this court's decision that would be impossible or unduly burdensome to satisfy by October 21, 2013. The "harm" it alleges simply cannot justify depriving plaintiffs and other same-sex couples of equality in the form of access to important federal marital benefits while appellate remedies are sought.

II. Whether the State's Claim is Settled, and Likelihood of Success on the Merits.

The State has not shown that the underlying legal right it seeks to vindicate through its appeal is "settled." *See Crowe, supra,* 90 *N.J.* at 133, 447 *A.*2d 173 ("[T]emporary relief should be withheld when the legal right underlying [the applicant's] claim is unsettled."). Indeed, its interpretation of *United States v. Windsor,* —— *U.S.* ——, ——, 133 *S.Ct.* 2675, 2696, 186 *L.Ed.*2d 808, 830 (2013), has not been endorsed by the United States Department of Justice or numerous federal agencies that have consulted with the United States Attorney General, and is inconsistent with the language of the *Windsor* decision limiting its reach "to those lawful marriages." The State's only argument on this point is that this case involves an unsettled New Jersey constitutional issue that should be decided by the New Jersey Supreme Court, and that this court's order should not be enforced because it is simply the ruling of one judge. This proposition is at odds with the *Crowe* standard, however, which requires that the applicant seeking injunctive relief show that *its* legal right is settled. *Ibid.* The State argues that this *Crowe* rule only applies to preliminary

injunctions, and that "the opposite rule governs an application for a stay pending appeal." But the New Jersey cases cited by the State do not directly enunciate this proposition, and the cited cases from other jurisdictions are not binding on this court. New Jersey courts have consistently and repeatedly noted that the *Crowe* standard governs stay applications. *See McNeil, supra,* 176 *N.J.* at 486, 825 *A.*2d 1124 (LaVecchia, J., dissenting); *In re Order of the Comm'r, supra,* 256 *N.J.Super.* at 560, 607 *A.*2d 992; *Zoning Bd. of Adj. v. Serv. Elec. Cable Television, Inc.,* 198 *N.J.Super.* 370, 379, 487 *A.*2d 331 (App.Div.1985); *Allstate Ins. Co. v. Lopez,* 311 *N.J.Super.* 660, 670, 710 *A.*2d 1072 (Law Div.1998). As will be explained in more detail in section four, below, the fact that unsettled constitutional issues are involved here is certainly a factor that weighs in favor of granting a stay, but it is not the determinative factor as the State suggests.

The State attempts to show a reasonable probability of success on the merits largely by reiterating the arguments set forth in the briefs submitted in opposition to plaintiffs' motion for summary judgment, without explaining why an appellate court would disagree with this court's resolution of those issues. Insofar as the arguments are repetitive of those addressed in the decision, the court defers to its previously articulated reasoning. And because the motion for summary judgment was based on a record composed of undisputed facts and largely concerned a matter of law, the New Jersey Supreme Court's guidance that injunctive relief "should not issue where all material facts are controverted" is inapplicable. *Crowe, supra,* 90 *N.J.* at 133, 447 *A.*2d 173.

Nonetheless, some of the points raised by the State in this motion warrant specific consideration here. First, the State argues that on appeal, "[p]laintiffs will not be able to overcome the highest presumption of constitutional validity that attaches to statutory enactments." The State also made this argument in its opposition brief to plaintiffs' summary judgment motion. In the decision, the court did not pass upon this issue because the court was never asked to strike down an enacted statute. The order

simply directs the State to permit same-sex marriage, leaving same-sex couples with the choice of pursuing civil marriages or civil unions, and leaving the New Jersey Legislature with the choice of maintaining or eliminating the Civil Union Act. Therefore, no such presumptions of validity are relevant to the reasoning of the decision. The State's argument in this regard simply rings hollow in the context of this case.

Second, the State argues for a very narrow reading of the holding in *Lewis v. Harris*, 188 *N.J.* 415, 459, 908 *A.*2d 196 (2006), upon which the decision was based. The State suggests that the language in *Lewis* that directs the New Jersey Legislature to "remedy the equal protection disparities that currently exist in our statutory scheme" constitutes a limitation of the holding to only those benefits guaranteed by state law. However, at the time of the *Lewis* decision, the issue of same-sex couples' eligibility for federal benefits was simply irrelevant because the Defense of Marriage Act (DOMA), 1 *U.S.C.A.* § 7, which restricted eligibility for federal marital benefits to only opposite-sex couples, was still valid. Indeed, the *Lewis* Court was especially cognizant of this fact, noting that, "what we have done and whatever the Legislature may do will not alter federal law, which only confers marriage rights and privileges to opposite-sex married couples." *Lewis, supra,* 188 *N.J.* at 459 n. 25, 908 *A.*2d 196. The decision is a straight-forward application of *Lewis,* where the Supreme Court held that same-sex couples must have access to the same benefits available to opposite-sex married couples under the New Jersey Constitution, to the current situation, in which DOMA has been repealed and federal benefits determinations have been left up to the federal agencies, many of which have refused to extend coverage for marital benefits to civil union couples.

In short, the State has demonstrated neither that the law upon which it relies is settled, nor a likelihood of success on appeal.

III.  Balancing the Relative Hardships.

The final factor under *Crowe* is "the relative hardship to the parties in granting or denying relief." *Crowe, supra,* 90 *N.J.* at

134, 447 *A.*2d 173. If a stay were to be issued in this case, Plaintiffs would continue to suffer violations of their equal protection rights for however long it takes for appellate review to be completed. Even if such review is expedited, it is likely that a minimum of several months would pass before a final decision is rendered. Meanwhile, plaintiffs and other same-sex couples in New Jersey would remain ineligible for federal marital benefits for no reason other than the label placed upon their relationship by the State. In particular, the protections contained in important and wide-reaching statutes such as the Family Medical Leave Act, 29 *U.S.C.* §§ 2601 to 2654, would not be available to same-sex couples while the stay is effective. Moreover, same-sex couples would continue to be ineligible for the federal tax benefits that are available to married couples, and same-sex couples who are federal employees would be ineligible for benefits under the federal pension system. And if the stay application is granted, same-sex couples would not be able to sponsor their non-citizen civil union partners to reside in the United States, perhaps forcing those couples to remain apart until some indeterminate time when the appeals have been resolved. In addition, if a same-sex civil union partner dies during the period when the stay is effective, the surviving partner would be barred from receiving federal spousal survivorship benefits, including tax benefits, and would be prevented from being interred at a national cemetery in New Jersey alongside his or her partner. *See* U.S. Dep't of Veterans Affairs, Nat'l Cemetery Admin., *Interments in Department of Veterans Affairs (VA) National Cemeteries,* at 7 (Jan. 2011), www.cem.va. gov/CEM/pdf/ IS1_Jan_2011.pdf (last visited Oct. 10, 2013) (a "spouse" or "surviving spouse" of an eligible veteran or Armed Services member may be interred in a national cemetery). And there are a number of economic hardships that a stay would cause to plaintiffs. Continued ineligibility for benefits could have indirect effects on dependent family members of civil union partners, federal retirement benefits would be inaccessible to same-sex couples during that time, and same-sex couples would not be covered spouses under Medicare.

These inequalities violate the clear directive in *Lewis* that, under the New Jersey Constitution, same-sex couples must be afforded access to the same marital benefits available to opposite-sex married couples. The injuries are thus of constitutional magnitude, and it is difficult—if not impossible—to see how they can properly be remedied through a recovery of money damages in the future. *See Crowe, supra,* 90 *N.J.* at 132–33, 447 *A.*2d 173 ("Harm is generally considered irreparable in equity if it cannot be redressed adequately by monetary damages . . . because of the nature of the injury or of the right affected."); *see also Andreiu v. Ashcroft,* 253 *F.*3d 477, 484 (9th Cir.2001) ("[S]eparation from family members" is a factor in determining whether non-citizens would be irreparably harmed if removed from United States); *Golden v. Kelsey–Hayes Co.,* 73 *F.*3d 648, 657 (6th Cir.1996) (finding no abuse of discretion when lower court concluded that financial hardship from loss of retirement benefits constitutes irreparable harm). And, if the motion for a stay is granted, same-sex couples would continue to suffer these irreparable injuries every day until appellate review is completed. *See, e.g., Elrod v. Burns,* 427 *U.S.* 347, 373, 96 *S.Ct.* 2673, 2690, 49 *L.Ed.*2d 547, 565 (1976) (holding that loss of First Amendment freedoms, even for short period of time, "unquestionably constitutes irreparable injury").

On the other side of the equation, the State invokes some sort of incorporeal harm to its sovereignty based on the need to maintain the current status of civil union couples pending appellate review, even as that status disadvantages those couples when compared to legally married New Jersey couples. The State has not made any showing that by simply permitting a new group of people to engage in marriage, and thereby allowing them access to federal marital benefits, the State will suffer any concrete injury or significant administrative burden. While the State argues that its sovereignty is somehow threatened by the order, because it is the *federal* government's actions that harm plaintiffs, it persists in denying its responsibility for the current predicament of New Jersey civil union couples. The State instead argues that the

federal agencies that have decided to extend eligibility for benefits to only same-sex married couples, and not to civil union couples, are misinterpreting *Windsor, supra,* —— *U.S.* ——, 133 *S.Ct.* 2675, 186 *L.Ed.*2d 808. According to the State, *Windsor* requires the federal government to defer to the definitions of "civil union" and "marriage" as defined by the State, so the agencies should extend benefits to same-sex civil union couples. Therefore, the State argues, the federal government is not respecting its sovereignty, and the order is also an infringement on state sovereign rights. However, despite its impassioned arguments to this court, the State has shown no interest in challenging the federal agencies' interpretations of *Windsor* to protect its sovereignty. It has shown no interest in demanding the equality it claims must be accorded to New Jersey civil union couples from Congress or the federal courts. As explained in the decision, plaintiffs would face an enormous litigation burden if they were required to challenge, on their own, every federal agency interpretation of *Windsor* denying equal access to marital benefits to civil union couples. Instead of using their creative legal talent and resources to protect its sovereignty and the equal protection rights of many of its citizens by challenging what it believes to be the federal government's violation of its sovereignty, the State foists the unfair litigation burden on plaintiffs and other New Jersey civil union couples. Since the sovereignty of the State appears not to be important enough for the State to even attempt to protect it from incursion by the federal government, its invocation of sovereignty as a basis for granting a stay here is appropriately given short shrift. Moreover, as pointed out in the decision, the litigation burden on New Jersey civil union couples wanting to challenge their ineligibility for federal marital benefits is a glaring inequality to which the State has no answer. The unfair nature of such a litigation burden was also highlighted by the *Lewis* Court as an example of unequal treatment precluded by the New Jersey Constitution. *Lewis, supra,* 188 *N.J.* at 450, 908 *A.*2d 196.

The State also points to a number of other factors that it claims weigh in favor of granting its motion for a stay. First, the State

has indicated its intent to seek prompt appellate review from the New Jersey Supreme Court. The State claims, therefore, that the stay—if granted—may only be a short one. However, as it stands now, as noted above, the time for completion of appellate review is completely uncertain. Second, the State argues that "[p]laintiffs' harm remains speculative" due to the evolving nature of federal law. This argument was rejected in some detail in the decision. Although laws may change in the future, such relief for plaintiffs is uncertain at best. What is certain is that New Jersey civil union couples are currently suffering constitutional injuries as a result of the status imposed on them by the State and the marital benefits denied to them by federal agencies as a result of that status. If the State were to prevail on appeal due to future changes in federal law, such relief would presumably afford civil union couples access to the same federal marital benefits as heterosexual married couples. If that happens, the equal protection rights of same-sex couples under the New Jersey Constitution will have been protected by the order in the interim period before any change in federal law that affords equal marital rights to civil union couples is enacted. Finally, the State questions the four affidavits submitted by plaintiff Garden State Equality in support of its motion for summary judgment, and suggests that those four Garden State Equality members have not shown that they actually applied for and were denied benefits. However, as was made clear in the decision, those four affidavits were submitted to establish Garden State Equality's organizational standing, and not to catalogue the many impacts on civil union couples from recent rulings of federal agencies. And the scope of the decision's holding affects thousands of same-sex couples in New Jersey who are currently ineligible for federal benefits, so questioning the contents of those four affidavits as part of this motion has little bearing on the broader concerns involved in this case.

Weighing these factors, it is clear that the equities favor enforcing the order so that the civil rights of same-sex couples can be protected against further deprivations pending appeal. As noted in *National Treasury Employees Union v. United States Depart-*

*ment of Treasury*, 838 *F.Supp.* 631, 640 (D.D.C.1993), "[the government's] attempt to portray potential harm as outweighing the individuals' constitutional privacy interests and Fifth Amendment claims [is] patently preposterous." A similar conclusion is supported by the record in this case.

IV. Issues that Affect the Public Interest.

The State has also argued that the stay should be issued because this case involves constitutional issues that affect the public interest. The State cites *Lewis, supra,* 188 *N.J.* at 461, 908 *A.*2d 196, where the New Jersey Supreme Court held that the issue of "how to define marriage" has "far-reaching social implications." The court accepts the proposition that the summary judgment order granted on September 27, 2013, involves a significant constitutional issue that affects the public interest, but finds that this argument cuts both ways and—insofar as it pertains to the State's claims—is not enough to support granting the motion for a stay in the unique circumstances of this case.

The main case relied upon by the State in support of its argument is *McNeil, supra,* 176 *N.J.* 484, 825 *A.*2d 1124. There, the Supreme Court of New Jersey issued, as a result of a 4–3 decision, a stay of an Appellate Division order declaring a legislative apportionment map unconstitutional and directing the Legislature to draw a new legislative map. In a very brief decision, the Court noted that, "[t]he standards informing the grant of a stay when an issue of significant public importance is raised must include not only the traditional [*Crowe*] factors ... but also, and most paramount, considerations of the public interest." *Ibid.* Without any further analysis, the Court concluded that, "the public interest is best served and harm to the voting public best avoided by assuring certainty at this time in the 2003 electoral cycle and ... maintaining the status quo." *Ibid.*

The *McNeil* Court expressly stated that the "public interest" concern must be analyzed *in addition* to the "traditional factors." *Ibid.* (noting that the standards governing a stay application must

include "not only the traditional factors," but "also" public interest considerations). In this case, none of the traditional factors governing whether to grant injunctive relief favors the State's application, so the fact that an issue of public concern was decided by this court is, by itself, simply insufficient to support granting the motion for a stay. *See Sherman v. Sherman,* 330 *N.J.Super.* 638, 642–43, 750 *A.*2d 229 (Ch.Div.1999) (all of the factors "must weigh in favor of the relief sought"); *S & R Corp. v. Jiffy Lube Int'l, Inc.,* 968 *F.*2d 371, 374 (3d Cir.1992) ("All four factors should favor preliminary relief before the injunction will issue.").

The State also relies on cases in which stays were ordered in the context of bidding for public contracts, such as *Palamar Construction, Inc. v. Pennsauken,* 196 *N.J.Super.* 241, 245–46, 482 *A.*2d 174 (App.Div.1983), and *PENPAC, Inc. v. Morris County Municipal Utilities Authority,* 299 *N.J.Super.* 288, 293, 690 *A.*2d 1094 (App.Div.1997). In both of those cases, stays were granted because of "the public interest involved." The "public interest" was in protecting the integrity of the bidding process, and orders awarding contracts were stayed to protect that integrity. *PEN-PAC, supra,* 299 *N.J.Super.* at 294, 690 *A.*2d 1094. The State also points to Committee To Recall Robert Menendez from the Office of *U.S. Senator v. Wells,* 413 *N.J.Super.* 435, 458, 995 *A.*2d 1109 (App.Div.), *rev'd,* 204 *N.J.* 79, 7 *A.*3d 720 (2010), where the Appellate Division stayed its order directing the Secretary of State to accept a recall petition for Senator Menendez, because it "addressed a substantial constitutional issue." And, in *Lanco, Inc. v. Director, Division of Taxation,* 379 *N.J.Super.* 562, 573 n. 5, 879 *A.*2d 1234 (App.Div.2005), constitutional issues that arose in a tax case caused the Appellate Division to stay a remand.

The cases relied upon by the State all deal with stays that were granted where, due to the particular factual circumstances of each case, issuing the stay was in the public interest. In this case, on the other hand, as explained briefly above and in great detail in the decision, this court has found that New Jersey same-sex couples are currently suffering due to their ineligibility for federal

benefits caused by the State's refusal to recognize same-sex marriages. Moreover, this court finds that this continuing deprivation of the equal protection rights of same-sex couples constitutes irreparable harm. Protecting the civil rights of New Jersey citizens is surely a matter of public interest. Indeed, there is no "public interest" in depriving a class of New Jersey residents their constitutional rights while appellate review is pursued. *See, e.g., Scott v. Roberts,* 612 *F.*3d 1279, 1297 (11th Cir.2010) ("[T]he public, when the state is a party asserting harm, has no interest in enforcing an unconstitutional law."). On the contrary, granting a stay would simply allow the State to continue to violate the equal protection rights of New Jersey same-sex couples, which can hardly be considered a public interest. *Cf. Armstrong v. O'Connell,* 416 *F.Supp.* 1325, 1331 (E.D.Wis.1976) ("If the portion of the injunction in question were suspended, the defendants would be free to infringe upon the constitutional rights of the plaintiffs.... The plaintiffs are entitled to whatever protection of their rights the injunction affords them.").

Nor does the fact that a constitutional issue is involved in this case require this court to issue a stay. As noted above, the *McNeil* Court suggested that constitutional considerations are simply an additional factor to consider when a court determines whether to grant a stay. And the cases relied upon by the State can be further distinguished because they do not involve deprivations of individual civil rights, as is the case here. Indeed, even when cases involve important constitutional issues, courts have rejected stay applications in order to protect the individual constitutional rights of plaintiffs. *See, e.g., Fortune v. Molpus,* 431 *F.*2d 799, 805 (5th Cir.1970) (overturning district court's stay of order requiring university to allow civil rights activist to speak on campus); *Armstrong, supra,* 416 *F.Supp.* at 1344 (denying stay requested by public school officials of order granting injunctive relief to plaintiffs on federal equal protection claim). In this case, the fact that plaintiffs would continue to suffer violations of their constitutional rights and irreparable injury through ongoing ineligibility for federal marital benefits while the stay is effective is a

key distinguishing factor from the cases relied upon by the State and weighs heavily in favor of rejecting the State's motion for a stay.

## CONCLUSION

■ Enforcing the order will not cause the State to suffer irreparable harm, the State does not have a likelihood of succeeding on appeal, and a balancing of the equities heavily favors rejecting the motion for a stay. Plaintiffs would suffer many hardships of constitutional magnitude if the stay were to be issued, but the State has not demonstrated how it would suffer in any meaningful way if the order is enforced. And there is no support for the proposition that, in the absence of any of the other factors informing whether to grant a motion for a stay, such a motion should be granted simply because a matter of great public interest is involved. Because the State has not satisfied its burden of showing that it is entitled to a stay of the order, its motion for a stay is denied.