**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0844-24

AAMHMT PROPERTY, LLC,

     Plaintiff-Respondent,

v.

TOWNSHIP OF MIDDLETOWN
and MIDDLETOWN TOWNSHIP
COMMITTEE,

     Defendants-Appellants,

and

MIDDLETOWN TOWNSHIP
PLANNING BOARD,

     Defendant-Respondent,

and

FAIRSHARE HOUSING
CENTER,

     Defendant/Intervenor-
     Respondent.

_____

Argued June 3, 2025 – Decided June 27, 2025

Before Judges Sumners, Susswein and Bergman.

On appeal from an interlocutory order of the Superior
Court of New Jersey, Law Division, Monmouth
County, Docket No. L-2588-23.

Brian M. Nelson argued the cause for appellants
(Spiro, Harrison & Nelson, LLC, attorneys; Brian M.
Nelson, and Dana A. Citron, on the briefs).

Reardon Anderson, LLC, attorneys for respondent
Township of Middletown Planning Board join in the
briefs of appellants.

Bryan D. Plocker argued the cause for respondent
AAMHMT Property, LLC (Hutt, Shimanowitz &
Plocker, PC, attorneys; Bryan D. Plocker, on the
brief).

Ariela Rutbeck-Goldman argued the cause for
intervenor Fair Share Housing Center (Fair Share
Housing Center, attorneys; Ariela Rutbeck-Goldman
and Joshua D. Bauers, on the brief).

PER CURIAM

This interlocutory appeal arises in the context of Mount Laurel[1] litigation.

By leave granted, defendants, Township of Middletown (Township) and the

Township of Middletown Planning Board (Board), appeal a July 5, 2024 Law

Division order to show cause (OTSC) enjoining them from taking further action

---

[1] S. Burlington Cnty. NAACP v. Twp. of Mount Laurel (Mount Laurel I), 67
N.J. 151 (1975).

to condemn and redevelop the subject property (Property). They also challenge the Law Division's October 4, 2024 order denying their motion for reconsideration. After reviewing the record in light of the parties' arguments and governing legal principles, we affirm.

I.

We presume the parties are familiar with the pertinent facts and procedural history, which we need only briefly summarize. On August 17, 2023, plaintiff AAMHMT Property, LLC, a contract purchaser of the Property, filed a complaint seeking a determination that the Township is in violation of its Third Round <u>Mount Laurel</u> compliance obligation and seeking the rezoning of the Property to redevelop it to include affordable housing, i.e., a "builder's remedy."

Four days after plaintiff filed the builder's remedy lawsuit, the Township adopted Resolution No. 23-228, authorizing the Board to undertake a preliminary investigation to determine whether the Property should be designated an "area in need of redevelopment" for condemnation purposes. A companion resolution, No. 23-227, also adopted that same day, designated Duva Development, LLC.[2] as the redeveloper of the Property.

---

[2] Duva Development, LLC is not a party to this appeal.

On September 18, 2023, the Township Committee enacted Ordinance No. 2023-3390, which amended the Redevelopment Plan to require that a site plan application could not be submitted to the Board unless the Township designated the applicant as the redeveloper.

On February 20, 2024, the Township adopted Resolution No. 24-95, accepting the Board's recommendation and determining that the Property is an area in need of redevelopment for condemnation purposes under the Local Redevelopment and Housing Law (LRHL), N.J.S.A. 40A:12A-1.

On May 17, 2024, the trial court entered an order finding that the Township is not constitutionally compliant with its Mount Laurel Third Round obligation. The Township estimates its obligation for Third Round at approximately 600 units while plaintiff argues it is around 1,000 units. In either event, it is undisputed that the Township is not constitutionally compliant with its Third Round obligation.

On June 7, 2024, plaintiff filed an OTSC, seeking to enjoin the Township from (1) "[t]aking any further action or effort towards the condemnation of the Property, including, but not limited to, filing any Declaration of Taking or any other condemnation-related action with respect to the Property"; (2) "[t]aking any further action or effort towards designating a redeveloper for the Property

4                                                                A-0844-24

(pursuant to the [LRHL], N.J.S.A. 40A:12-1 . . . )"; and (3) "[g]ranting any type of development approval for any parcel of land for any purpose, other than for an inclusionary housing development."  On June 18, the trial court entered an initial OTSC with temporary restraints, enjoining the Township from taking any further action with respect to the condemnation and redevelopment of the Property, and scheduled a hearing to determine whether to grant plaintiff's OTSC and maintain the restraints.

On July 5, the trial court heard oral argument and partially granted plaintiff's OTSC in an oral opinion.  Applying the Crowe factors,[3] the trial court emphasized that the prospective use for the Property is important.  With respect to the irreparable harm Crowe factor, the court explained:

> [U]nless the developer has all of the money themselves, and they are just taking it out of their piggy bank to build this, you're going to banks . . . it's a pretty involved process and the fact that the public entity is moving ahead with condemnation—because the declaration of . . . taking . . . is the like stop the presses, but the stuff that happens leading . . . up to that, any lender is going to know about that and . . . it does cast a shadow potentially on being able to move forward with development.
>
> So, while it technically is a money issue, it's bigger than that . . . .  It's the potential for being able to move forward with development of a project.  Nothing

_____

[3] Crowe v. De Gioia, 90 N.J. 126, 132-34 (1982).

A-0844-24

has been approved yet and no determination has been made that the [P]roperty is appropriate for the development of affordable housing . . . [plaintiff] [has] satisfied the first principle.

The trial court also considered the Crowe factors with respect to whether the legal rights underlying plaintiff's claim are well-settled, and whether material facts are controverted. The court stated:

> [T]he important fact we have here is that [the Township] is not constitutionally compliant. So, it does have an obligation to provide the opportunity for development of affordable housing.
>
> I haven't heard anything indicating, other than that the town wants this to be commercial, that it's environmentally not appropriate, that nothing can be built here. Obviously, the town wants something to be built here of a commercial nature, and . . . the legal right and the legal obligations under the Mount Laurel doctrine are pretty clear, and with reference to a builder's remedy, again, the developer doesn't get everything they want. They may not get anything that they want. It may not be that this property can be developed for affordable housing, but the determination made that [the Township] isn't constitutionally compliant absolutely, it sort of gets you over that hump to the next stage.

The trial court next considered the relative hardships to the parties, finding that plaintiff's hardships outweigh the Township's. The court reasoned that "moving forward with condemnation will potentially negatively affect the ability of the plaintiff to move forward showing the [court] . . . that this property

6

is appropriate and should be approved for affordable housing inclusive residential development."  As for the hardship to the Township, the court explained:

> I don't see that [the Township] is negatively affected in a way that outweighs the hardship to the plaintiff.  [The Township] is saying we can't condemn now.  We can't file a declaration of taking now.  I could say . . . you can keep going on your plan, and . . . stop short of a declaration of taking, but the hardship to [the Township]. . . there are some old barns or something on that property that need to be knocked down, but they have been standing there for . . . a really long time, they can continue to stand there.  And there is no question in my mind but that [the Township] at this point absolutely cannot file a declaration of taking.  They absolutely cannot condemn property where a builder says I want to build a residential housing project with an affordable housing component.

On July 8, the trial court entered a companion order on the return date of OTSC clarifying the restraints will continue until "the later of the following:  (a) the [c]ourt's determination of whether plaintiff is entitled to a builder's remedy in this Mount Laurel litigation; or (b) the court's determination of whether plaintiff is entitled to an order permanently enjoining defendants from designating a redeveloper other than plaintiff for the Property."

On October 4, the trial court denied the Township's motion for reconsideration.  The court in its oral decision amplified its prior findings,

adding that the Township has indicated "there is lots of other places in town that it can go" which, the court reasoned, is important from "a builder's remedy standpoint."

We granted the Township's motion for leave to appeal. Defendants raise the following contentions for our consideration:

POINT I

THE [TRIAL] COURT BELOW ABUSED ITS DISCRETION BY GRANTING INJUNCTIVE RELIEF BECAUSE PLAINTIFF FAILED TO SATISFY THE CROWE FACTORS.

 A. The [Trial Court] Erred by Finding Irreparable Harm.

  a. Any potential harm is speculative and not imminent.

  b. Any potential harm is reversible, and an injunction is not necessary to maintain the status quo.

  c. Plaintiff can be remedied by compensatory or other corrective relief.

 B. The [Trial Court] Erred by Finding a Well-Settled Legal Right and Likelihood of Success on the Merits.

 C. The [Trial Court] Erred in Finding the Harm to Plaintiff Outweighed the Harm to [the Township].

D. There is No Evidence of Harm to the Public Interest.

POINT II

THE [TRIAL COURT] ERRED IN ITS INTERPRETATION OF EMINENT DOMAIN LAW AND BY CREATING NEW LAW THAT HAS NO SUPPORT IN NEW JERSEY JURISPRUDENCE.

A. The Trial Court Erred by Finding [the Township]'s Proposed Redevelopment was not a Public Use and Enjoining [the Township] from Condemnation and Redevelopment Efforts.

B. The Trial Court Erred by Erasing Constitutional Rights to Eminent Domain and Redevelopment when a Municipality is Non-Compliant with Mount Laurel Requirements.

POINT III

THE [TRIAL COURT] ERRED BY WEIGHING THE PARTIES' COMPETING USES AND NOT DEFERRING TO [THE TOWNSHIP]'S PROPOSED USE.

POINT IV

THE [TRIAL COURT] ERRED BY PROSPECTIVELY ENJOINING THE GOVERNMENTAL ACTIONS RATHER THAN ALLOWING THEM TO BE ADJUDICATED AND DECIDED ON THEIR MERITS.

Defendants raise the following arguments in their reply brief:

POINT I

9

THE [TRIAL COURT] ABUSED ITS DISCRETION BY GRANTING INJUNCTIVE RELIEF BECAUSE PLAINTIFF FAILED TO SATISFY THE CROWE FACTORS.

    A. The [Trial Court] Erred by Finding Irreparable Harm.

    B. The [Trial Court] Erred by Finding a Well-Settled Legal Right and Likelihood of Success on the Merits.

    C. The [Trial Court] Erred in Finding the Harm to Plaintiff Outweighed the Harm to [the Township].

POINT II

THE [TRIAL COURT] ERRED IN ITS INTERPRETATION OF EMINENT DOMAIN LAW AND BY CREATING NEW LAW THAT LACKS SUPPORT IN NEW JERSEY JURISPRUDENCE.

POINT III

THE [TRIAL COURT] ERRED BY WEIGHING THE PARTIES' COMPETING USES AND NOT DEFERRING TO [THE TOWNSHIP]'S PROPOSED USE.

POINT IV

THE [TRIAL COURT] ERRED BY PROSPECTIVELY ENJOINING THE GOVERNMENTAL ACTIONS RATHER THAN ALLOWING THEM.

II.

To provide context, and because the trial court emphasized the Township's noncompliance with its constitutional obligations with respect to affordable housing, we begin our analysis by briefly summarizing the pertinent principles that undergird Mount Laurel litigation.  As our Supreme Court explained, "[t]he Mount Laurel series of cases recognized that the power to zone carries a constitutional obligation to do so in a manner that creates a realistic opportunity for producing a fair share of the regional present and prospective need for housing low- and moderate-income families."  In re Adoption of N.J.A.C. 5:96 & 5:97 ex rel. New Jersey Council on Affordable Hous. (Mount Laurel IV), 221 N.J. 1, 3-4 (2015) (footnote omitted).  In 1975, the Court prohibited the discriminatory use of zoning powers and mandated that municipalities in their development activities affirmatively "afford the opportunity for decent and adequate low- and moderate-income housing," commensurate with "the municipality's fair share of the present and prospective regional need therefor."  Mount Laurel I, 67 N.J. at 187-88.

In 1983, the Court reaffirmed that the New Jersey Constitution requires towns to provide "a realistic opportunity for the construction of [their] fair share of the present and prospective regional need for low and moderate income

housing." S. Burlington Cnty. NAACP v. Mount Laurel Twp. (Mount Laurel II), 92 N.J. 158, 205 (1983) (citing Mount Laurel I, 67 N.J. at 174). Importantly for purposes of this appeal, the Court created judicial remedies, which include a "builder's remedy." The Court added that "a strong judicial hand" must be used to "provide a realistic opportunity for housing, not litigation" and to avoid "[c]onfusion, expense, and delay," which it deemed the "primary enemies of constitutional compliance." Mount Laurel II, 92 N.J. at 199, 292.

"In response, the Legislature enacted the [Fair Housing Act of 1985 (FHA), N.J.S.A. 52:27D-301 to -329], which created [the Council on Affordable Housing (COAH)] and vested primary responsibility for assigning and determining municipal affordable housing obligations in that body." Mount Laurel IV, 221 N.J. at 7 (citing N.J.S.A. 52:27D-305, -307). However, the Legislature has since found that COAH's

> . . . inability to function ultimately led the Supreme Court in 2015 to order the temporary dissolution of the requirement that administrative remedies be exhausted prior to resolving affordable housing disputes before the court and allowed the courts to resume their role as the forum of first resort for evaluating municipal compliance with Mount Laurel obligations pursuant to guidelines laid out by the Supreme Court's order.
>
> [N.J.S.A. 52:27D-302(l).]

12

The statute thus permits access to the judicial process for compliance by filing declaratory judgment litigation. Mount Laurel IV, 221 N.J. at 20. We note that these civil actions are assigned to specially designated judges.[4] Id. at 33, 36.

In 2024, the Legislature amended the FHA and codified the builder's remedy in N.J.S.A. 52:27D-302. Under this statutory framework, a builder's remedy lawsuit is an action filed by a real estate developer to compel a municipality to allow the construction of a large, multi-family housing structure or complex that includes some affordable housing units. See In re Twp. of Bordentown, 471 N.J. Super. 196, 221 (App. Div. 2022) ("A builder's remedy provides a developer with the means to bring 'about ordinance compliance through litigation.'" (quoting Mount Olive Complex v. Twp. of Mount Olive, 356 N.J. Super. 4500, 505 (App. Div. 2003))).

## III.

With that background in mind, we next consider the standards governing preliminary injunctions. The law is well settled that a trial court has discretion

---

[4] We deem a judge's Mount Laurel designation to be analogous to that given to Family Part judges, to whom we give deference based on their expertise in regularly handling those types of cases. See generally Div. of Child Prot. & Permanency v. B.P., 257 N.J. 361, 373-74 (2024) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)) (alteration in original) ("Because of the family courts' special jurisdiction and expertise in family matters, [we] should accord deference to family court factfinding.").

A-0844-24

on whether to grant a preliminary injunction, and the court's decision will be overturned on appeal only for an abuse of that discretion. Horizon Health Ctr. v. Felicissimo, 135 N.J. 126, 137 (1994); Rinaldo v. RLR Inv., LLC, 387 N.J. Super. 387, 395 (App. Div. 2006). "An abuse of discretion occurs when a decision was 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Savage v. Twp. of Neptune, 472 N.J. Super. 291, 313 (App. Div. 2022) (quoting Wear v. Selective Ins. Co., 455 N.J. Super. 440, 459 (App. Div. 2018)).

That said, injunctive relief is an extraordinary equitable remedy that should be entered by a trial court after exercising great care and only if the movant demonstrates, by clear and convincing evidence, entitlement to the requested relief. Dolan v. DeCapua, 16 N.J. 599, 614 (1954). Under Crowe, the party seeking injunctive relief bears the burden of demonstrating that: (1) irreparable harm is likely if the relief is denied; (2) the applicable underlying law is well settled; (3) the material facts are undisputed and there exists a reasonable probability of ultimate success on the merits of the claim; and (4) the balance of the hardship to the parties favors the issuance of the requested relief. 90 N.J. at 132-34.

IV.

We next apply these general principles concerning <u>Mount Laurel</u> lawsuits and preliminary injunctions to the matter before us, starting with the irreparable harm <u>Crowe</u> factor. Defendants contend the trial court erred because plaintiff's alleged harm is not imminent, is speculative, and is purely of a monetary nature. Defendants further argue an injunction is not necessary to maintain status quo. Defendants stress the Township "has taken no further steps towards condemnation or redevelopment[,]" such as "authorized or conducted an appraisal to determine [the Property's] fair market value, has not adopted an ordinance to authorized acquisition, has not made any good faith offer to commence negotiations to acquire the Property, and has not filed a condemnation complaint." They also contend that "any of the steps in the condemnation process, including filing of the declaration of taking, can be undone using the procedures set forth in the [Eminent Domain Act]."

We note the fact that defendants have not taken further steps "towards condemnation" is a two-edged sword when viewed in context with our Supreme Court's admonition that expense and delay associated with litigation are among the "primary enemies of constitutional compliance." <u>Mount Laurel II</u>, 92 N.J. at 199, 292. We nonetheless decline to speculate on any underlying motivations

A-0844-24

for either defendants' redevelopment plan or litigation strategy. Rather, we focus on the narrow question before us in this interlocutory appeal, that is, whether the trial court abused its discretion in applying the Crowe factors.

The law is clear that while we are deferential to a Mount Laurel trial court's factual findings, "a preliminary injunction should not be entered except when necessary to prevent substantial, immediate and irreparable harm." Subcarrier Commc'ns, Inc. v. Day, 299 N.J. Super. 634, 638 (App. Div. 1997) (citing Citizens Coach Co. v. Camden Horse R.R. Co., 29 N.J. Eq. 299, 303-04 (E. & A. 1878)). "Harm is generally considered irreparable in equity if it cannot be redressed adequately by monetary damages," which "may be inadequate [due to] the nature of the injury or of the right affected." Crowe, 90 N.J. at 132-33.

In this instance, the trial court recognized that while this dispute involves monetary issues, it also broaches the "bigger" issue of "being able to move forward with development" and address the Township's constitutional noncompliance. In cases where the public interest is affected, a reviewing court must balance the public interest in addition to the other Crowe factors. Garden State Equality v. Doe, 216 N.J. 314, 321 (2013) (quoting McNeil v. Legis. Apportionment Comm'n, 176 N.J. 484, 484 (2003)). Mount Laurel cases are unquestionably matters of public interest. As our Supreme Court explained in

16

its first <u>Mount Laurel</u> opinion, "[i]t is plain beyond dispute that proper provision for adequate housing of all categories of people is certainly an absolute essential in promotion of the general welfare required in all local land use regulation." <u>Mount Laurel I</u>, 67 N.J. at 179. In assessing the harm, moreover, the trial court heavily relied on the magnitude of the Township's noncompliance. We see no abuse of discretion in the manner in which the trial court addressed the first <u>Crowe</u> factor.

Nor are we persuaded by defendant's arguments with respect to the second factor. Under <u>Crowe</u>, "temporary relief should be withheld when the legal right underlying plaintiff's claim is unsettled." 90 N.J. at 133. Defendants challenge the trial court's finding that the legal obligations under the <u>Mount Laurel</u> doctrine are clear. We disagree. While <u>Mount Laurel</u> litigation can be very complex and fact sensitive, we are satisfied that for purposes of <u>Crowe</u> analysis, the law is well-settled on municipalities' constitutional obligations, especially when, as in this case, the level of noncompliance is significant.

As to the third <u>Crowe</u> factor, defendants argue that the trial court did not make adequate findings with respect to the probability of success on the merits. "A builder's remedy should be granted if: (1) the 'developer succeeds in <u>Mount Laurel</u> litigation'; (2) the developer 'proposes a project providing a substantial

17

amount of lower income housing'; and (3) the developer's proposal is not 'contrary to sound land use planning.'" In re Twp. of Bordentown, 471 N.J. Super. at 221-22 (footnote omitted) (quoting Mount Laurel II, 92 N.J. at 279-80). Further, "a builder's remedy should be granted unless the municipality establishes that because of environmental or other substantial planning concerns, the plaintiff's proposed project is clearly contrary to sound land use planning." Mount Laurel II, 92 N.J. at 279-280.

Here, the trial court found the first prong of a builder's remedy is met. Defendants do not dispute that the Township's Third Round affordable housing deficit is at least 602 units. The court also emphasized that defendants had not raised any issues about environmental or other planning concerns, and that it was "obvious[]" the Township wanted to build something on the Property "commercial in nature," rather than affordable housing.

We acknowledge that predicting the outcome of hotly-fought litigation is inherently difficult. Presently, we see no reason to second-guess the findings of a specially designated Mount Laurel judge in assessing the probability that plaintiffs will succeed on the merits of its builders remedy lawsuit.

Turning to the fourth Crowe factor, we are likewise unpersuaded by defendants' arguments pertaining to the balance of the hardships to the parties.

In its appeal brief, defendants describe their harm as the Township's "inability to serve the public interest by revitalizing the Property with commercial development that will improve the quality of life for its residents and spur new job growth and business opportunities." The trial court in no way ignored that argument but rather concluded such hardship was mitigated by the fact that the Township can use its condemnation powers for commercial development elsewhere within the municipality.

In sum, we conclude trial court did not abuse its discretion and made sufficient findings to support the preliminary restraints.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

19

A-0844-24