79 A.3d 1036

GARDEN STATE EQUALITY; DANIEL WEISS AND JOHN GRANT; MARSHA SHAPIRO AND LOUISE WALPIN; MAUREEN KILIAN AND CINDY MENEGHIN; SARAH KILIAN–MENEGHIN, A MINOR, BY AND THROUGH HER GUARDIANS; ERICA AND TEVONDA BRADSHAW; TEVERICO BARACK HAYES BRADSHAW; A MINOR, BY AND THROUGH HIS GUARDIANS; MARCYE AND KAREN NICHOLSON–MCFADDEN; KASEY NICHOLSON–MCFADDEN; A MINOR, BY AND THROUGH HIS GUARDIANS; MAYA NICHOLSON–MCFADDEN; A MINOR, BY AND THROUGH HER GUARDIANS; THOMAS DAVIDSON AND KEITH HEIMANN; MARIE HEIMANN DAVIDSON, A MINOR, BY AND THROUGH HER GUARDIANS; GRACE HEIMANN DAVIDSON, A MINOR, BY AND THROUGH HER GUARDIANS; PLAINTIFFS–RESPONDENTS, v. PAULA DOW, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF NEW JERSEY; JENNIFER VELEZ, IN HER OFFICIAL CAPACITY AS COMMISSIONER OF THE NEW JERSEY DEPARTMENT OF HUMAN SERVICES, AND MARY E. O'DOWD, IN HER OFFICIAL CAPACITY AS COMMISSIONER OF THE NEW JERSEY DEPARTMENT OF HEALTH AND SENIOR SERVICES, DEFENDANTS–MOVANTS.

October 18, 2013.

316

*Jean P. Reilly,* Deputy Attorney General, submitted a brief on behalf of movants (*John J. Hoffman,* Acting Attorney General, attorney; *Kevin R. Jesperson,* Assistant Attorney General, of counsel; *Ms. Reilly* and *Robert T. Lougy,* Assistant Attorney General, on the briefs).

*Lawrence S. Lustberg* submitted a brief on behalf of respondents (*Gibbons* and *Lambda Legal,* attorneys; *Mr. Lustberg, Benjamin Yaster* and *Hayley J. Gorenberg,* a member of the New York bar, on the brief).

Chief Justice RABNER delivered the opinion of the Court.

In 2006, this Court unanimously held that the New Jersey Constitution guarantees same-sex couples in committed relationships the same rights and benefits as married couples of the opposite sex. *Lewis v. Harris,* 188 *N.J.* 415, 423, 908 *A.*2d 196 (2006). In response, the Legislature passed the Civil Union Act and established "civil unions." *N.J.S.A.* 37:1–28 to –36. Civil unions are meant to guarantee the rights and benefits of marriage, but the law does not allow same-sex partners to "marry." *N.J.S.A.* 37:1–28, –33.

Plaintiffs filed a lawsuit in 2011 and alleged that civil-union status fails to provide equal treatment to same-sex couples. Plaintiffs are Garden State Equality, an advocacy group, and six same-sex couples and their children.

The Supreme Court's recent ruling in *United States v. Windsor,* 570 *U.S.* ——, 133 *S.Ct.* 2675, 186 *L.Ed.*2d 808 (2013), changed the

contour of the pending lawsuit. In *Windsor*, the Supreme Court struck down part of the federal Defense of Marriage Act (DOMA). *Id.* at ——, 133 *S.Ct.* at 2696, 186 *L.Ed.*2d at 830. The Court held that DOMA violated the federal Constitution by denying lawfully married same-sex couples the benefits given to married couples of the opposite sex. *Ibid.*

Plaintiffs moved for summary judgment in this case after the decision in *Windsor*. On September 27, 2013, the Honorable Mary C. Jacobson, Assignment Judge of the Superior Court for the Mercer Vicinage, issued a comprehensive, 53–page decision and granted plaintiffs' motion. Judge Jacobson found that in the wake of *Windsor*, civil-union partners are being denied equal access to federal benefits because of the label placed on their relationship. The trial court therefore held that the State must extend the right to civil marriage to same-sex couples. An accompanying order directed that beginning on October 21, 2013, State officials must allow same-sex couples, who otherwise qualify for civil marriage, to marry in New Jersey.

The Attorney General, acting on behalf of the named defendants, moved for a stay of the trial court's order. Judge Jacobson denied the motion, and the State now appeals. On October 11, 2013, we granted the State's motion for direct certification and took jurisdiction over the stay motion.

At the heart of this motion are certain core facts and principles. *Lewis* guaranteed same-sex couples equal rights under the State Constitution. After *Windsor*, a number of federal agencies extended marital benefits to same-sex couples who are lawfully married, but not to partners in civil unions. As a result, civil-union partners in New Jersey today do not receive the same benefits as married same-sex couples when it comes to family and medical leave, Medicare, tax and immigration matters, military and veterans' affairs, and other areas. The State Constitution's guarantee of equal protection is therefore not being met.

■ To evaluate an application for a stay, this Court in essence considers the soundness of the trial court's ruling and the effect of a stay on the parties and the public. *See Crowe v. De Gioia,* 90 *N.J.* 126, 447 *A.*2d 173 (1982). Largely for the reasons stated in Judge Jacobson's opinion dated October 10, 2013, we deny the State's motion for a stay. The State has advanced a number of arguments, but none of them overcome this reality: same-sex couples who cannot marry are not treated equally under the law today. The harm to them is real, not abstract or speculative.

Because, among other reasons, the State has not shown a reasonable probability of success on the merits, the trial court's order—directing State officials to permit same-sex couples, who are otherwise eligible, to enter into civil marriage starting on October 21, 2013—remains in effect.

## I.

■ Applications for a stay pending appeal are governed by the familiar standard outlined in *Crowe. See, e.g., In re Comm'r of Ins. Deferring Certain Claim Payments by N.J.A.F.I.U.A.,* 256 *N.J.Super.* 553, 560, 607 *A.*2d 992 (App.Div.1992). A party seeking a stay must demonstrate that (1) relief is needed to prevent irreparable harm; (2) the applicant's claim rests on settled law and has a reasonable probability of succeeding on the merits; and (3) balancing the "relative hardships to the parties reveals that greater harm would occur if a stay is not granted than if it were." *McNeil v. Legis. Apportionment Comm'n,* 176 *N.J.* 484, 486, 825 *A.*2d 1124 (2003) (LaVecchia, J., dissenting) (citing *Crowe, supra,* 90 *N.J.* at 132–34, 447 *A.*2d 173). The moving party has the burden to prove each of the *Crowe* factors by clear and convincing evidence. *Brown v. City of Paterson,* 424 *N.J.Super.* 176, 183 (App.Div.2012) (citation omitted). "In acting only to preserve the status quo, the court may 'place less emphasis on a particular *Crowe* factor if another greatly requires the issuance of the remedy.'" *Ibid.* (citation omitted).

■ When a case presents an issue of "significant public impor-
tance," a court must consider the public interest in addition to the
traditional *Crowe* factors. *McNeil, supra,* 176 *N.J.* at 484, 825
*A.*2d 1124.

## II.

To provide the necessary backdrop for this motion, we briefly
review the principal case law and the Civil Union Act.

In *Lewis, supra,* seven same-sex couples applied for marriage
licenses. 188 *N.J.* at 423–24, 908 *A.*2d 196. Different municipali-
ties denied the requests because State law confined marriage to
opposite-sex couples. *Id.* at 424, 908 *A.*2d 196. The couples sued
State officials and challenged the constitutionality of the State's
marriage laws. *Ibid.* The couples argued that the laws violated
the equal protection guarantee of Article I, Paragraph 1 of the
New Jersey Constitution, *id.* at 427, 908 *A.*2d 196, which declares
that all persons possess "unalienable rights" to enjoy life, liberty,
and property, and to pursue happiness.

After reviewing various rights afforded to married but not
same-sex couples, *id.* at 448–49, 908 *A.*2d 196, the Court concluded
that the State's domestic partnership laws "failed to bridge the
inequality gap," *id.* at 448, 908 *A.*2d 196. Because the Court could
not "find a legitimate public need for an unequal legal scheme of
benefits and privileges that disadvantage[d] committed same-sex
couples," *id.* at 453, 908 *A.*2d 196, the Court held that the disparity
violated the Constitution's guarantee of equal protection, *id.* at
423, 908 *A.*2d 196. The Court therefore directed the State to
"provide to committed same-sex couples, *on equal terms,* the *full
rights and benefits* enjoyed by heterosexual married couples." *Id.*
at 463, 908 *A.*2d 196 (emphases added).

To comply with that holding, the Court deferred to the Legisla-
ture to make the following choice: either grant same-sex couples
the right to enter into a civil marriage, or "enact a parallel
statutory structure" under a different name "so long as the rights

and benefits of civil marriage are made equally available to same-sex couples." *Id.* at 423, 463, 908 *A.*2d 196.

The Legislature chose the second option. It enacted the Civil Union Act, which established civil unions in February 2007. *See N.J.S.A.* 37:1–28 to –36. The act provides that civil unions are to be treated the same as marriages. *N.J.S.A.* 37:1–28, –33. The statute, though, does not allow same-sex couples to marry and does not extend the title "marriage" to civil unions.

Four months ago, the Supreme Court decided *Windsor*. The case involved two women, Edith Windsor and Thea Spyer, who began a long-term relationship in 1963 and later married in Canada. *Windsor, supra,* 570 *U.S.* at ——, 133 *S.Ct.* at 2683, 186 *L.Ed.*2d at 816. The State of New York recognized their marriage. *Ibid.*

When Spyer died in 2009, she left her entire estate to Windsor. *Ibid.* The Defense of Marriage Act, however, barred Windsor from claiming the federal estate tax exemption available to surviving spouses. *Ibid.*[1] As a result, Windsor had to pay $363,053 in estate taxes. *Ibid.* After the Internal Revenue Service denied her request for a refund, Windsor filed suit and asserted that DOMA was unconstitutional. *Ibid.*

The Court observed that "[t]he avowed purpose and practical effect of the law … are to impose a disadvantage, a separate status, and so a stigma upon all who enter into same-sex marriages made lawful by the unquestioned authority of the States."

---

[1] Section 3 of DOMA defined "marriage" and "spouse": "In determining the meaning of any Act of Congress, or of any ruling, regulation, or interpretation of the various administrative bureaus and agencies of the United States, the word 'marriage' means only a legal union between one man and one woman as husband and wife, and the word 'spouse' refers only to a person of the opposite sex who is a husband or a wife." 1 *U.S.C.A.* § 7. DOMA applied to more than "1,000 federal statutes and the whole realm of federal regulations." *Windsor,* 570 *U.S.* at ——, 133 *S.Ct.* at 2690, 186 *L.Ed.*2d at 824. Those laws and regulations "pertain[] to Social Security, housing, taxes, criminal sanctions, copyright, and veterans' benefits." *Id.* at ——, 133 *S.Ct.* at 2694, 186 *L.Ed.*2d at 828.

*Id.* at ——, 133 *S.Ct.* at 2693, 186 *L.Ed.*2d at 827. The Supreme Court held that DOMA violated basic due process and equal protection principles under the Fifth Amendment to the United States Constitution. *Id.* at ——, ——, 133 *S.Ct.* at 2693, 2695, 186 *L.Ed.*2d at 827, 830. By striking down the part of DOMA in question, the Court did not allow federal laws and regulations to continue to deny lawfully married same-sex couples the benefits provided to married opposite-sex couples. The Court also stated that its "opinion and its holding are confined to ... lawful marriages." *Id.* at ——, 133 *S.Ct.* at 2696, 186 *L.Ed.*2d at 830.

After *Windsor,* plaintiffs in this case moved for summary judgment, and the trial court granted the motion. Judge Jacobson reasoned that plaintiffs were not eligible for marital benefits that a number of federal agencies had extended to same-sex married couples in light of *Windsor.* She observed that "New Jersey same-sex couples in civil unions" were "now denied benefits solely as a result of the label placed upon them by the State." In her judgment, the harm to same-sex couples in a "wide range of contexts" violated *Lewis* and the State Constitution's guarantee of equal protection. That "unequal treatment," she ruled, "require[d] that New Jersey extend civil marriage to same-sex couples."

## III.

We turn now to the merits of the State's motion for a stay and consider each of the relevant factors.

## A.

■ The State argues that it will suffer irreparable harm in a number of ways if Judge Jacobson's order is not stayed. First, it claims "an injury to its sovereign interests whenever one of its democratically enacted laws is declared unconstitutional." The abstract harm the State alleges begs the ultimate question: if a law is unconstitutional, how is the State harmed by not being able to enforce it? *See Joelner v. Vill. of Wash. Park,* 378 *F.*3d 613,

620 (7th Cir.2004) ("[T]here can be no irreparable harm to a municipality when it is prevented from enforcing an unconstitutional statute[.]") (citing *Connection Distrib. Co. v. Reno*, 154 *F.*3d 281, 288 (6th Cir.1998)).

The State relies on other federal cases for the broad proposition it advances. *See Maryland v. King*, ―― *U.S.* ――, ――, 133 *S.Ct.* 1, 3, 183 *L.Ed.*2d 667, 670 (2012) (Roberts, C.J., in chambers) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.") (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 *U.S.* 1345, 1351, 98 *S.Ct.* 359, 363, 54 *L.Ed.*2d 439, 445 (1977) (Rehnquist, J., in chambers)). But the State cites no New Jersey case law for the principle that enjoining a statute's enforcement always amounts to irreparable harm. In any event, the trial court did not strike down the Civil Union Act; it instead directed the State to allow same-sex couples to enter into civil marriage.

Second, the State contends that "once it grants marriage licenses to even a handful of same-sex couples, it is virtually impossible . . . to undo that action later"; the harm would be "irremediable." The State does not explain why that is so. As Judge Jacobson noted, California's experience reveals the opposite. *See Lockyer v. City and Cnty. of San Francisco*, 33 *Cal.*4th 1055, 17 *Cal. Rptr.*3d 225, 95 *P.*3d 459, 464, 494 (2004) (decision by California Supreme Court ordering San Francisco county clerk to stop issuing marriage licenses to same-sex couples and to take specific steps to nullify 4,000 licenses that had already been issued).[2]

The State has presented no explanation for how it is tangibly or actually harmed by allowing same-sex couples to marry. It has not made a forceful showing of irreparable harm.

---

[2] Additional history of what occurred in California after 2004 can be found in *Hollingsworth v. Perry*, ―― *U.S.* ――, 133 *S.Ct.* 2652, 186 *L.Ed.*2d 768 (2013), and the lower court decisions in the case.

## B.

Next, to obtain a stay, the State must demonstrate that its underlying legal claim is settled, and it must show a reasonable probability of success on the merits. *See Crowe, supra,* 90 *N.J.* at 133, 447 *A.*2d 173. The State has not made either showing.

The State flips around the *Crowe* standard and argues that *plaintiffs'* interpretation of *Windsor* and its challenge to the Civil Union Act present unsettled questions of constitutional law. As Judge Jacobson correctly observed, the *Crowe* standard requires the moving party—in this case, the State—to show "that *its* legal right is settled." *See ibid.* Regardless, the State maintains that the premise underlying *Windsor* means that civil-union partners *are* entitled to federal benefits. That interpretation of *Windsor* has not been followed by the United States Department of Justice or any number of federal agencies. The Supreme Court in *Windsor, supra,* declared that its "opinion and its holding are *confined* to ... lawful [same-sex] *marriages.*" 570 *U.S.* at ——, 133 *S.Ct.* at 2696, 186 *L.Ed.*2d at 830 (emphases added). In the wake of that decision, federal agencies have directed that various benefits be made available to same-sex married couples, but not to civil-union partners. That, in turn, deprives partners in a civil union of the rights and benefits they would receive as married couples. The State's thoughtful position about what federal law should provide cannot substitute for federal action; nor can the State's views bind the federal government.

█ To assess the State's chance to succeed on the merits and overturn the trial court's judgment, we return to the core principles that frame this case. In *Lewis, supra,* this Court held that to comply with the equal protection guarantee of Article I, Paragraph 1 of the New Jersey Constitution, "the State must provide to committed same-sex couples, on equal terms, the full rights and benefits enjoyed by heterosexual married couples." 188 *N.J.* at 463, 908 *A.*2d 196. The Legislature, in turn, enacted the Civil Union Act, which allows same-sex couples to enter into a civil union. *See N.J.S.A.* 37:1–28 to –36. The law does not permit

them to marry. *Windsor* then changed the landscape. By striking the part of DOMA that defined marriage as "a legal union between one man and one woman," 1 *U.S.C.A.* § 7, the United States Supreme Court paved the way to extending federal benefits to married same-sex couples. *Windsor, supra,* 570 *U.S.* at ——, 133 *S.Ct.* at 2696, 186 *L.Ed.*2d at 830. A number of federal agencies responded and now provide various benefits to married same-sex couples. Because State law offers same-sex couples civil unions but not the option of marriage, same-sex couples in New Jersey are now being deprived of the full rights and benefits the State Constitution guarantees.

■ The State presents three arguments to show that its appeal has a reasonable probability of success. First, the State claims that plaintiffs "will not be able to overcome the highest presumption of constitutional validity that attaches to statutory enactments." Once again, Judge Jacobson did not strike down a statute. The Civil Union Act, while it may not see much use in the coming months, remains available for people who choose to use it. Even more important, though, the statute was presumptively valid "so long as" it provided full and equal rights and benefits to same-sex couples. *Lewis, supra,* 188 *N.J.* at 423, 908 *A.*2d 196. Based on recent events, the Civil Union Act no longer achieves that purpose.

Second, the State argues that plaintiffs' "claims fail on federalism grounds." Underlying part of this argument is the State's interpretation of *Windsor,* which, as noted above, is at odds with the practice of the federal government. Although the State claims that the federal government must "defer to the states in matters concerning domestic relations," federal agency rulings are following New Jersey's rule about who may marry.

Third, the State claims that plaintiffs' equal protection claim must fail because "the State's action is not legally cognizable." The State argues that it has followed *Lewis* and provided "same-sex couples with all *State* marriage benefits," and that it cannot be responsible for "federal bureaucrats that … refused to extend federal benefits."

*Lewis* is not limited in that way. The decision recognized that it could not alter federal law, *Lewis, supra,* 188 *N.J.* at 459 n. 25, 908 *A.*2d 196, yet at the same time directed the State to provide same-sex couples "the *full* rights and benefits enjoyed by heterosexual married couples," *id.* at 463, 908 *A.*2d 196 (emphasis added). *Lewis* left it to the Legislature to revise State law in a way that satisfied the Constitution's guarantee of equal protection. *Id.* at 457–62, 908 *A.*2d 196. And the State acted in response. It enacted the Civil Union Act and created a structure that allows same-sex couples to enter into a civil union but not to marry. *See N.J.S.A.* 37:1–28 to –36. That structure today provides the framework for decisions by federal authorities. The State's statutory scheme effectively denies committed same-sex partners in New Jersey the ability to receive federal benefits now afforded to married partners. The trial court therefore correctly found cognizable action by the State.

We conclude that the State has not shown a reasonable probability or likelihood of success on the merits.

### C.

 *Crowe, supra,* also requires that we balance the relative hardships to the parties. 90 *N.J.* at 134, 447 *A.*2d 173. The State identified certain abstract harms that are addressed above. Weighed against them are immediate and concrete violations of plaintiffs' right to equal protection under the law. Because plaintiffs cannot marry under State law, they and their children are simply not eligible for a host of federal benefits available to same-sex married couples today.

For example, partners in a civil union cannot receive a number of health related benefits: they cannot claim leave under the Family and Medical Leave Act if a partner becomes sick or is injured;[3] they cannot get coverage for health benefits as a

---

[3] *Fact Sheet # 28F: Qualifying Reasons for Leave Under the Family and Medical Leave Act,* U.S. Dep't of Labor, Wage and Hour Div., http://www.dol.gov/whd/regs/compliance/whdfs28f.pdf (last visited Oct. 17, 2013).

"spouse" of a federal employee;[4] and they cannot get certain Medicare benefits, including services in a skilled nursing facility for a spouse.[5]

Unlike same-sex married couples, civil-union partners also cannot file a joint federal tax return;[6] they cannot be considered a "spouse" for immigration purposes;[7] and they cannot participate in a Survivor Benefit Plan as a spouse of an active or retired member of the military.[8] All of these and other examples affect not only partners to a civil union but also their children.

*Lewis* guarantees equal treatment under the law to same-sex couples. That constitutional guarantee is not being met. And the ongoing injury that plaintiffs face today cannot be repaired with an award of money damages at a later time. *See Crowe, supra,* 90 *N.J.* at 132–33, 447 *A.*2d 173 ("Harm is generally considered irreparable in equity if it cannot be redressed adequately by monetary damages."); *see also LaForest v. Former Clean Air*

---

[4] Letter from John O'Brien, Dir. of Healthcare and Ins., U.S. Office of Personnel Mgmt., Fed. Emp. Ins. Operations, to All Carriers (July 3, 2013), *available at* http://www.opm.gov/healthcare–insurance/healthcare/carriers/2013/2013–20.pdf.

[5] Press Release, U.S. Dep't of Health & Human Servs., HHS Announces First Guidance Implementing Supreme Court's Decision on the Defense of Marriage Act (Aug. 29, 2013), *available at* http://www.hhs.gov/news/press/2013pres/08/20130829a.html; Memorandum from Danielle R. Moon, Dir., Medicare Drug & Health Plan Contract Admin. Grp., to All Medicare Advantage Orgs. (Aug. 29, 2013), *available at* http://hr.cch.com/hld/SNF–Benefits–after–USvWindsor DOMA–decison8–29–13.pdf.

[6] Internal Revenue Service, Rev. Rul.2013–17, at 12, http://www.irs.gov/pub/irs–drop/rr–13–17.pdf (last visited Oct. 17, 2013).

[7] *U.S. Visas for Same–Sex Spouses,* Travel.State.Gov, U.S. Dep't of State, http://travel.state.gov/visa/frvi/frvi_6036.html# (last visited Oct. 17, 2013).

[8] Press Release, Chief of Naval Personnel Public Affairs, U.S. Dep't of the Navy, Same–Sex Spouses of Military Retirees Now Eligible for Survivor Benefits Program (Sept. 9, 2013, 3:22 PM), *available at* http://www.navy.mil/submit/display.asp?story_id=76431.

*Holding Co.,* 376 *F.*3d 48, 55 (2d Cir.2003). Plaintiffs highlight a stark example to demonstrate the point: if a civil-union partner passes away while a stay is in place, his or her surviving partner and any children will forever be denied federal marital protections.

The balance of hardships does not support the motion for a stay.

### D.

■ Finally, because this case presents an issue of significant public importance, we consider the public interest. *McNeil, supra,* 176 *N.J.* at 484, 825 *A.*2d 1124. What is the public's interest in a case like this? Like Judge Jacobson, we can find no public interest in depriving a group of New Jersey residents of their constitutional right to equal protection while the appeals process unfolds.

The State cites various cases in which courts have granted a stay. *See, e.g., Comm. to Recall Robert Menendez from the Office of U.S. Senator v. Wells,* 413 *N.J.Super.* 435, 458, 995 *A.*2d 1109 (App.Div.2010) (staying order that recall process begin), *rev'd on other grounds,* 204 *N.J.* 79, 7 *A.*3d 720 (2010) (finding State recall process of United States Senator unconstitutional); *PENPAC, Inc. v. Morris Cnty. Mun. Utils. Auth.,* 299 *N.J.Super.* 288, 293, 690 *A.*2d 1094 (App.Div.1997) (staying order that voided government contract for violation of public bidding requirements), *certif. denied,* 150 *N.J.* 28, 695 *A.*2d 670 (1997); *Palamar Constr., Inc. v. Pennsauken,* 196 *N.J.Super.* 241, 245, 482 *A.*2d 174 (App.Div.1983) (same). Those rulings served the public interest in light of the particular circumstances presented.

In other situations, courts have declined to enter a stay in order to protect individual constitutional rights. *See, e.g., Armstrong v. O'Connell,* 416 *F.Supp.* 1325, 1332 (E.D.Wis.1976) (denying stay of order that enjoined defendants from discriminating on basis of race in operation of public schools); *Fortune v. Molpus,* 431 *F.*2d 799, 804 (5th Cir.1970) (vacating single-judge stay of District Court's order directing university officials to permit civil rights activist to speak on campus). We find that the compelling public

interest in this case is to avoid violations of the constitutional guarantee of equal treatment for same-sex couples.

The State argues that we should give the democratic process "a chance to play out" rather than act now. When courts face questions that have far-reaching social implications, *see Lewis, supra,* 188 *N.J.* at 461, 908 *A.*2d 196, there is a benefit to letting the political process and public discussion proceed first. Courts should also "avoid reaching constitutional questions unless required to do so." *Comm. to Recall Menendez, supra,* 204 *N.J.* at 95–96, 7 *A.*3d 720 (citing *Harris v. McRae,* 448 *U.S.* 297, 306–07, 100 *S.Ct.* 2671, 2683, 65 *L.Ed.*2d 784, 798 (1980); *Randolph Town Ctr. v. Cnty. of Morris,* 186 *N.J.* 78, 80, 891 *A.*2d 1202 (2006)). But when a party presents a clear case of ongoing unequal treatment, and asks the court to vindicate constitutionally protected rights, a court may not sidestep its obligation to rule for an indefinite amount of time. Under those circumstances, courts do not have the option to defer.

## IV.

We have before us today a motion for a stay. To rule on the stay motion, we applied settled legal standards and determined that the State has not shown a reasonable probability it will succeed on the merits. Additional arguments on the merits will be considered in January 2014.

We conclude that the State has not made the necessary showing to prevail on any of the *Crowe* factors and that the public interest does not favor a stay. We therefore deny the State's motion for a stay. As a result, the trial court's order dated September 27, 2013 remains in full force and effect. State officials shall therefore permit same-sex couples, who are otherwise eligible, to enter into civil marriage beginning on October 21, 2013.

Justices LaVECCHIA, ALBIN, HOENS and PATTERSON and Judges RODRÍGUEZ and CUFF (both temporarily assigned), join in Chief Justice RABNER's opinion.