NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2598-21

IN THE MATTER OF
NJ TRANSIT AWARD OF
CONTRACTS NO. 21-048A
and NO. 21-048B TO
ORANGE, NEWARK,
ELIZABETH BUS, INC.,
I/P/A COACH USA, LLC.

_____

APPROVED FOR PUBLICATION

July 29, 2022

APPELLATE DIVISION

Argued May 31, 2022 – Decided July 29, 2022

Before Judges Messano, Accurso and Enright.

On appeal from New Jersey Transit.

Matthew Lakind argued the cause for appellant
Academy Express, LLC (Tesser & Cohen, attorneys;
Lee Tesser and Matthew Lakind, on the briefs).

Jennifer Borek argued the cause for respondent NJ
Transit (Genova Burns LLC, attorneys; Jennifer
Borek, of counsel and on the brief; Victor Andreou, on
the brief).

Maeve E. Cannon argued the cause for respondent
Orange, Newark, Elizabeth Bus Inc. (Stevens & Lee,
attorneys; Maeve E. Cannon, of counsel and on the
brief; Michael A. Cedrone, on the brief).

The opinion of the court was delivered by

ACCURSO, J.A.D.

We granted Academy Express LLC's application to file an emergent motion to stay New Jersey Transit's award or execution of Contract No. 21-048A (Hudson County bus routes 2, 84 and 88) pending Academy Express's appeal of NJ Transit's decision to award the contract to Orange, Newark, Elizabeth Bus Inc. (ONE Bus), and permitted ONE Bus to intervene as an interested party, entering a temporary stay pursuant to Rule 2:9-8 pending our disposition of the motion. Having now considered the parties' briefs and listened to oral argument — and without prejudice to the merits panel's ultimate disposition of the matter — we deny the motion and dissolve our temporary stay.[1] Reviewing the facts presented in the submissions on the emergent application through the prism of the Crowe[2] factors, we conclude Academy Express has not demonstrated a reasonable probability of success on the merits of its appeal. See Garden State Equal. v. Dow, 216 N.J. 314, 320 (2013) (application for a stay requires consideration of the soundness of the ruling and the effect of a stay on the parties and the public).

---

[1] We issued our order denying the motion on June 15, 2022, with a supplemental statement of reasons, advising the parties "[a] formal opinion memorializing this order will be forthcoming." This opinion is essentially our supplemental statement of reasons, reformatted for publication and with minor stylistic changes to improve its readability.

[2] Crowe v. De Gioia, 90 N.J. 126 (1982).

A-2598-21

The essential facts are not disputed. In September 2021, NJ Transit issued a request for proposals from qualified carriers to provide regular route local bus services in the Hudson and North Hudson County areas via two, three-year contracts: Contract No. 21-048A (Hudson County routes 2, 84 and 88) and Contract No. 21-048B (North Hudson routes 22, 23, 86 and 89). In accord with N.J.S.A. 27:25-11(c)(2), NJ Transit declared its intention to execute an agreement with the carrier whose proposal was "the most advantageous, . . . price and other factors considered." At the time NJ Transit issued the RFP, ONE Bus was operating Hudson and North Hudson local bus routes 2, 22, 23 and 88 pursuant to an emergency contract and NJ Transit was operating routes 84, 86 and 89 itself due to Transit's decision not to renew its existing contract with an Academy Express affiliate, No. 22 Hillside, LLC, which had operated the routes.

Submitted proposals were to be evaluated by a Technical Evaluation Committee whose "recommendation to award" was to "be made based on technical and cost evaluation scores as well as comparison to the benchmark cost submitted by NJ Transit Bus Operations." Although the committee's recommendation to award would be made to the proposer with the highest total combined score who submitted the lowest cost bid, the RFP made clear NJ Transit "reserve[d] the right to reject any and all Proposal(s) in accordance

A-2598-21

with applicable law," and that "[t]he award of the Contract [was] subject to the approval of the NJ Transit Board of Directors."

NJ Transit received only two proposals for each contract — from Academy Express and ONE Bus. Although the Technical Evaluation Committee ranked ONE Bus's proposal slightly higher on the technical evaluation scores, Academy Express's lower bid on both contracts resulted in higher scores on the cost evaluation, yielding Academy Express a higher combined score and ranking for both contracts as follows:

| Contract No. 21-48A | Costs | Differential | Costs score | Tech. score | Combined score | Ranking |
|---|---|---|---|---|---|---|
| Academy Express | $77,704,216.80 | $0.00 | 100 | 85.20 | 185.20 | 1 |
| ONE Bus | $86,436,316.22 | $8,732,099.42 | 88.76 | 92.60 | 181.36 | 2 |

| Contract No. 21-48B | Costs | Differential | Costs score | Tech. score | Combined score | Ranking |
|---|---|---|---|---|---|---|
| Academy Express | $47,284,321.07 | $0.00 | 100 | 85.20 | 185.20 | 1 |
| ONE Bus | $53,800,351.30 | $6,516,030.23 | 86.22 | 92.60 | 178.82 | 2 |

On February 15, 2022, NJ Transit issued a "Notice of Intent to Award" both contracts to Academy Express. The Notice advised it was "subject to the full execution of a written contract," which itself was subject to "passage through Board Approval and the New Jersey Governor veto period." NJ Transit expressly reserved the right to cancel the Notice of Intent at any time prior to the execution of the written contract.

4

On March 4, 2022, ONE Bus submitted a request for reconsideration, and shortly thereafter a supplemental request following its receipt of the Technical Evaluation Committee's scoring sheet pursuant to an OPRA request, arguing the Technical Evaluation Committee had "grossly misjudged its evaluation" of Academy Express's "experience and qualifications" and "operations" components by failing to account for the "massive fraud" the Attorney General alleged Academy companies had perpetrated against NJ Transit in a recently settled qui tam action.

Specifically, in March 2017, a former No. 22 Hillside employee filed a complaint under seal against Academy Express and several of its affiliated companies and officers pursuant to the qui tam provisions of the New Jersey False Claims Act, N.J.S.A. 2A:32C-1 to -18. Following an investigation into the relator's allegations, the Attorney General filed a complaint in intervention in November 2020 against Academy Bus LLC and its affiliated companies, No. 22 Hillside, Academy Lines, LLC, and Academy Express, movant here.[3]

In addition to the corporate defendants, the complaint named Academy officer defendants Thomas F.X. Scullin, Vice President and Chief Operating Officer of each of the Academy affiliates; Frank DiPalma, Controller for each

---

[3] The Attorney General alleged, and the settlement agreement confirms, Academy Bus is the 100% owner and parent corporation of Academy Lines, Academy Express, and No. 22 Hillside.

of the Academy affiliates; Antonio Luna, a former assistant manager at No. 22 Hillside and current dispatcher for the Academy affiliates; and Edward Rosario, general manager of No. 22 Hillside. The Attorney General maintained that although each of the Academy corporate affiliate defendants served "different parts of the Academy operation, at all relevant times defendants Number 22 Hillside, LLC, . . . Academy Lines, LLC, Academy Express, LLC, and Academy Bus, LLC, functioned as one operation, all managed by the Academy officer defendants, among others, shifting drivers and buses from one company to the other to maximize Academy's profits overall."

The Attorney General alleged Academy Bus, its officers, employees and affiliated companies had engaged in a "massive," "multi-year, multi-million dollar fraud" against NJ Transit through No. 22 Hillside's operation of Hudson bus routes 2, 10, 22, 22X, 23, 88 and 119. Under its contract with NJ Transit, No. 22 Hillside was required to submit detailed monthly reports to NJ Transit about the number of miles and hours it operated the bus line as well as all "missed trips." The Attorney General alleged that from April 2012 to December 2018, Academy defrauded NJ Transit "out of more than $15 million," by "systematically, knowingly, and deliberately" underreporting the number of missed bus trips to avoid paying thousands of missed trip fees and

overcharged NJ Transit for hours and miles not actually driven. The Attorney General alleged that in 2016 alone, Academy defrauded NJ Transit out of more than $3.6 million by "deliberately fail[ing] to report more than 12,000 missed trips, averaging over 1,000 unreported missed trips each month." From September to November 2016, Academy failed to report "more than 3,500 missed bus trips, an average of more than 40 bus trips a day."

The Attorney General claimed "[i]nternal Academy documents and sworn testimony show[ed] that Academy's exceedingly high number of actual [m]issed [t]rips most months resulted from Academy's deliberate decision to divert its short supply of bus drivers away from the bus lines it operated for New Jersey Transit in favor of higher paying contracts." The complaint alleged Academy's officers "were aware of, and directed, the shifting of bus drivers from New Jersey Transit runs to Academy's other operations, including higher-paying private charter trips, to the detriment of New Jersey Transit and its customers." The Attorney General alleged "Academy's fraud" not only caused harm to NJ Transit and New Jersey taxpayers, but also "caused the riding public to suffer because Academy missed tens of thousands of bus trips on busy Hudson and South Hudson service area bus lines."

ONE Bus contended a review of the Technical Evaluation Committee's score sheet made clear the Committee had not taken the qui tam action into

account in assessing Academy Express's technical scores, notwithstanding they "directly related to the RFP's Services." ONE Bus claimed that "[i]f appropriately considered, the litigation should have substantially reduced points" to Academy Express in the categories of "legal proceedings, experience, and personnel." ONE Bus concluded its supplemental request for reconsideration of Academy Express's scores by rhetorically asking, "If a lawsuit that alleges a massive fraud with considerable evidence committed by a proposer on the very same services as the RFP still results in an 'excellent' score, what does it take for a proposer to only achieve 'good' or 'poor'?"[4]

Five days before NJ Transit issued its Notice of Intent to award the contract to Academy Express, the Academy companies settled the qui tam action by agreeing to pay the State $20.5 million over nine years, which sum would include individual contributions by Scullin of $150,000 and contributions by Rosario and Luna of $50,000 each. The settlement agreement provides it was "neither an admission of liability by Defendants nor a

_____

[4] In its brief, NJ Transit did not address the Technical Evaluation Committee's reasons for not considering the Attorney General's qui tam allegations regarding the Academy companies' prior operation of these routes in its evaluation of Academy Express's proposal. See N.J.A.C. 16:85-2.3(a)(4) (providing the agency is to consider "[t]he adequacy of performance by a carrier or its affiliates under other contracts or leases with NJ Transit" in deciding "whether to contract out regular route bus services"). Because our query at oral argument did not provide an answer to the question, we do not address it.

concession by the State or the Relator that their claims are not well-founded."

The State agreed "to not make any application for debarment or suspension" of

Academy Bus, Academy Lines, Academy Express or No. 22 Hillside based on

the allegations of the complaint, "[s]ubject to and conditioned upon the

Defendants' timely payments of the full Settlement Amount and compliance

with their obligations" as set forth in the agreement. "With respect to any

contract or agreement to operate New Jersey Transit bus lines," those

obligations include an agreement to abide by the following terms:

> a. Shall not engage in any violations of the [New Jersey False Claims Act] relating to any contract with New Jersey Transit, including their missed trip and miles and hours reporting and invoicing.
>
> b. Shall implement and share with New Jersey Transit within thirty (30) days of the Effective Date of the final Settlement Agreement, new written policies and procedures to ensure accurate reporting of missed trips and hours and miles on all contracts with New Jersey Transit, including training on accurate reporting, policies on maintenance of adequate records and databases, and adequate document retention policies.
>
> c. Shall create within thirty (30) days of the Effective Date of the final Settlement Agreement comprehensive written bus operator training policies that ensure the proper use of all provided equipment, including but not limited to proper use of and log-on to Clever Devices and other telematics, as well as the proper reporting of equipment malfunctions.
>
> d. Shall create and share with New Jersey Transit within thirty (30) days of the Effective Date of the

final Settlement Agreement comprehensive written procedures that the Entity Defendants' Road Supervisors must employ to ensure conformity to contracted bus service rules and regulations, as well as driver adherence to specific routes and accident reporting. The Entity Defendants should retain all data sheet reports created by Entity Defendants' Road Supervisors while performing these functions, and make them available to New Jersey Transit upon request.

e. Shall report to the Attorney General and New Jersey Transit within seven (7) days if any of the Defendants learn that any other Defendant or any of their employees or agents has engaged in any conduct to falsify any records of missed trips or miles and hours submitted to New Jersey Transit for payment or if any of their employees or agents responsible for submitting, preparing, or approving records of missed trips or miles and hours is arrested, indicted, convicted, or engaged in unethical or irregular business activity.

f. Shall submit with each invoice for payment a personal certification from a Senior Vice President, Chief Financial Officer or such person's designee, of the Entity Defendant that attests to the accuracy of that submission, as well as the accuracy of the supporting Daily and Monthly Reports of Operation.

g. Shall for three (3) years following the commencement of the first new contract with New Jersey Transit after the Effective Date of the final Settlement Agreement, engage an independent Integrity Oversight Monitor that is fully financed by the Entity Defendants and approved by New Jersey Transit to oversee the accuracy of its internal records of trip operations and the accuracy of invoices and missed trip and miles and hours reporting to New Jersey Transit for such new contract, as well as for

10

any current contracts New Jersey Transit has with an Entity Defendant. Such monitor shall be in place prior to the commencement of the first new contract with New Jersey Transit after the Effective Date of the final Settlement Agreement, and with respect to any existing contracts, shall be in place within fourteen (14) days of the Effective Date of the final Settlement Agreement. The monitor would be responsible for, among other things, the following duties:

i. Monitor the Entity Defendants' internal controls, as they apply to the proper maintenance of records and accurate billing relating to any contract with New Jersey Transit. Particular emphasis shall be placed on assessing the design and effectiveness of the Entity Defendants' controls to prevent or detect any fraudulent reporting and invoicing in their New Jersey Transit contracts.

ii. Ensure that accurate supporting documentation is submitted with invoices to New Jersey Transit.

iii. Ensure that the Entity Defendants have a comprehensive policy against retaliation for those complaining of misconduct on the part of Defendants or their officers or employees.

iv. Defendants agree to fully cooperate with the monitor by, among other things, providing the monitor with access to all records and documents, including the Entity Defendants' Line Run System or any later comparable database, and electronically stored information, solely concerning any current or future contract with New Jersey Transit.

11

> v. Defendants further agree to fully cooperate with the monitor by, among other things, permitting the monitor to make verbal and written reports to New Jersey Transit regarding the monitor's activities and Defendants' compliance with the terms of this Agreement.
>
> vi. Defendants agree that, without informing the Entity Defendants, the monitor shall inform the New Jersey Attorney General and New Jersey Transit of any suspected or actual criminal, unethical or irregular business activity by Defendants or their officers or employees.

On March 8, 2022, six days before the NJ Transit Board meeting at which the contracts were to be voted on, Academy transmitted copies of the written policies and procedures required by the Settlement Agreement to NJ Transit and made efforts to obtain an integrity oversight monitor. NJ Transit claims it received the materials on March 9, 2022, three business days before the Board meeting.

At its March 14, 2022 meeting, the NJ Transit Board was presented with resolutions to award the Hudson County and North Hudson contracts to Academy Express. During the public comment section of the meeting, several individuals expressed their opposition to the award to Academy Express as constituting a disservice to the public, including former Senator Loretta Weinberg and Senator Joseph Cryan, who "strongly urged" the Board to select

12

the runner up bid based on Academy's "multi-year, multi-million dollar fraud" that had left "people standing by the side of the road."

The Board unanimously voted against awarding the contracts to Academy Express and voted in favor of awarding them to ONE Bus.[5]  The Board members set forth their reasons for voting to deny the contracts, including concerns about Academy's moral integrity and ethics and concerns that the protections contemplated in the very recent settlement agreement were not in place at the time of the award.  Several acknowledged their responsibility as Board members under N.J.S.A. 27:25-4.1(b)(1) to apply their independent judgment in the best interests of NJ Transit, expressing the view that Academy was not a "responsible bidder" under the bidding statutes.

Three weeks after the vote, Academy Express submitted an application for reconsideration to the NJ Transit Procurement and Support Services Department.  In a verified petition in support of the application, Academy Express alleged the Board's reasons for rejecting its bid were "based on erroneous facts" and constituted a "gross abuse of its power" and a violation of New Jersey's public bidding laws.  It sought a stay of the execution of the

---

[5]  Following negotiations on price as provided under the RFP, NJ Transit determined ONE Bus only met the criteria for an award against NJ Transit's benchmark cost for Contract No. 21-048A, the Hudson County routes.  As to Contract No. 21-048B, the North Hudson lines, NJ Transit states it intends to operate and run the routes itself through Bus Operations.

contracts with ONE Bus and an expedited review of its request for reconsideration.

By letter of April 22, 2022, Ronald Hovey, NJ Transit's Acting Chief Procurement Officer, denied Academy Express's request for reconsideration and a stay of the award to ONE Bus, emphasizing the Notice of Intent to award the contracts to Academy Express was subject to approval by NJ Transit's Board of Directors. In the letter, the Acting Chief rejected Academy Express's "attempts to distinguish" itself from No. 22 Hillside, the corporate entity sued by the State "for allegedly defrauding NJ Transit of approx. $15 million and of providing poor service to NJ Transit and its customers," noting No. 22 Hillside was "100% owned and managed by the same persons that own and manage Academy [Express]."

The letter further provided Academy Express had

> not made its case that the Board's stated reasons are erroneous. The Board utilized its independent judgment, taking into consideration the factors articulated in N.J.S.A. 27:25-4.1, and decided that rejecting Academy's bids was in the best interest of NJ Transit. N.J.A.C. 16:72-3.12. That rationale is reflected in the Minutes of the 14 March 2022 meeting.

> Academy has not shown that the Board relied upon incorrect or erroneous reasons in its decision, or that the Board could not consider "moral integrity" in making its decision, or that it could not consider the views of elected officials or other persons, who made

14

public comments at the Board meeting. For these reasons, we deny Academy's Request for Reconsideration, and determine that NJ Transit's agency action was not arbitrary, capricious or unreasonable under the circumstances.

The Acting Chief was also unpersuaded by Academy Express's claim that rejecting its bids based on "moral integrity" acted as a de facto debarment or suspension of the bus company. He wrote the

claim is untrue — if Academy [Express] was debarred by NJ Transit, it would not have been able to participate in the bidding of these contracts. In addition, the debarment would have repercussions beyond its business with NJ Transit, and would most likely bar Academy [Express] from doing business with other public transit agencies. NJ Transit has not debarred or suspended Academy [Express] from bidding on contracts with NJ Transit, but that issue does not bar the NJ Transit Board from evaluating bids, pursuant to their own independent judgment, as required by law.

Finding the rejection of Academy Express's bid would cause it no irreparable harm under a Crowe analysis, the Acting Chief denied Academy Express's request for a stay.

Academy Express has appealed and seeks emergent relief in the form of a stay of the award or execution of Contract No. 21-048A to ONE Bus pending our disposition of its appeal on the merits, reprising the arguments it made to NJ Transit. Because appellate review of bidding disputes in "[c]ontractual matters in which the State and its public entities engage must proceed with

15

alacrity," Barrick v. State, 218 N.J. 247, 264 (2014), we granted Academy Express's application to file an emergent motion for a stay pending appeal pursuant to Rule 2:9-8, allowed briefing, as well as intervention by ONE Bus as an interested party, and set the matter down for oral argument. Having reviewed the record, the parties' briefs and heard oral argument on the motion, we are convinced the motion should not be granted.

The requirements for issuance of a stay are well established. The party seeking the stay must establish by clear and convincing evidence that

> (1) relief is needed to prevent irreparable harm;
> (2) the applicant's claim rests on settled law and has a reasonable probability of succeeding on the merits; and (3) balancing the "relative hardships to the parties reveals that greater harm would occur if a stay is not granted than if it were."
>
> [Garden State, 216 N.J. at 320 (quoting McNeil v. Legis. Apportionment Comm'n, 176 N.J. 484, 486 (2003) (LaVecchia, J., dissenting)).]

"When a case presents an issue of 'significant public importance,'" we must also "consider the public interest in addition to the traditional Crowe factors." Garden State, 216 N.J. at 321 (quoting McNeil, 176 N.J. at 484). To evaluate an application for a stay, an appellate court "in essence considers the soundness of the . . . ruling and the effect of a stay on the parties and the public." Garden State, 216 N.J. at 320.

Performing that analysis here, it's clear the controlling factor is Academy Express's inability to demonstrate any reasonable probability of success on the merits of its appeal. Appellate review of administrative action is "severely limited." Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995). An appellate court "will not overturn an agency determination unless it is arbitrary, capricious, or unreasonable." In re Renewal Application of TEAM Acad. Charter Sch., 247 N.J. 46, 73 (2021). "The deferential standard is consistent with 'the strong presumption of reasonableness that an appellate court must accord an administrative agency's exercise of statutorily delegated responsibility.'" In re Att'y Gen. Law Enf't Directive Nos. 2020-5 & 2020-6, 246 N.J. 462, 489 (2021) (quoting City of Newark v. Nat. Res. Council, Dep't of Env't Prot., 82 N.J. 530, 539 (1980)).

We are not asked to review the wisdom of the State's decision not to debar an entity it claims has defrauded it of tens of millions of dollars, but instead permit it to fund its scheduled $20.5 million in settlement payments through additional State contracts — and thus we do not do so. Our task is simply to apply the gross abuse of discretion criterion to NJ Transit's choice between what it has determined to be two qualified bidders under the standard established in N.J.S.A. 27:25-11(c)(2). See Barrick, 218 N.J. at 258.

NJ Transit is a public corporation created by the New Jersey Public Transportation Act of 1979, N.J.S.A. 27:25-1 to -24, tasked with maintaining "a coherent public transportation system," N.J.S.A. 27:25-2(b), including the power to acquire and operate public bus service, N.J.S.A. 27:25-2(e), N.J.A.C. 16:85-1.1. Maison v. N.J. Transit Corp., 245 N.J. 270, 287 (2021). To that end, the Act gives NJ Transit the power to "enter into contracts with any public or private entity to operate motorbus regular route . . . services." N.J.S.A. 27:25-6(b).

The powers of NJ Transit are "vested in the voting members of the board." N.J.S.A. 27:25-4(e). N.J.S.A. 27:25-4.1(b)(1) provides:

> The members of the board shall perform each of their duties as board members, including but not limited to those imposed by this section, in good faith and with that degree of diligence, care, and skill which an ordinarily prudent person in like position would use under similar circumstances, and may take into consideration the views and policies of any elected official or body, or other person and ultimately apply independent judgment in the best interest of the corporation, its mission, and the public.

This RFP is governed by N.J.S.A. 27:25-11(c), which provides that NJ Transit may reject any bid or proposal when it determines, among other things, "it is in the public interest to do so." N.J.S.A. 27:25-11(c)(2) further provides that contract awards shall be made to "the responsible bidder whose bid or proposal, conforming to the invitation for bids or request for proposals, will be

18

the most advantageous to [NJ Transit], price and other factors considered."

See N.J.A.C. 16:72-3.12.

The RFP is also subject to NJ Transit's "contracting out" regulations, N.J.A.C. 16:85-1.1 to -3.14, under which the agency adopted a specific policy to govern how bus services provided by NJ Transit should be contracted out to private carriers. N.J.A.C. 16:85-1.1(a); Acad. Bus Tours, Inc. v. N.J. Transit Corp., 263 N.J. Super. 353, 356 (App. Div. 1993). The regulations are applicable, as in this case, whenever NJ Transit "performs a competitive procurement process seeking proposals for the operation of regular route bus services." N.J.A.C. 16:85-1.1(b). The "contracting out" regulations provide that NJ Transit's decision to award a carrier a contract for regular route bus service will be based on both financial, N.J.A.C. 16:85-2.2, and non-financial considerations, N.J.A.C. 16:85-2.3. Significantly, non-financial considerations include the "adequacy of performance by a carrier or its affiliates under other contracts or leases with NJ Transit," and "[a]ny other factor that NJ Transit deems relevant to a particular proposal and deems to be in the public interest." N.J.A.C. 16:85-2.3(a)(4),(7). "If an award is made, the award shall be made to that carrier whose proposal, conforming to the request for proposals, will be most advantageous to NJ Transit, as so determined by NJ Transit." N.J.A.C. 16:85-3.14.

Considering Academy Express's reasonable probability of success against those standards, its proofs are seriously wanting. Its argument that NJ Transit violated the legislative intent of the public bidding laws in rejecting its proposal requires no discussion here. See R. 2:11- 3(e)(1)(E). As ONE Bus notes, NJ Transit has been statutorily exempted from the need to bid the contracting-out of bus routes, N.J.S.A. 27:25-6(b), N.J.S.A. 27:25-11(g)(3)(d), and is expressly not required to award the contract to the "lowest responsible bidder." N.J.S.A. 27:25-11(c)(1),(2).

Nor is NJ Transit required to adopt the proposal recommended by the Technical Evaluation Committee, or to afford the Committee's evaluation any deference. The contract award is plainly subject to approval by the NJ Transit Board, whose members, in performing their duties, can "take into consideration the views and policies of any elected official or body, or other person and ultimately apply independent judgment in the best interest of" NJ Transit. N.J.S.A. 27:25-4.1(b)(1). The Board's consideration of "price and other factors," N.J.S.A. 27:25-11(c)(2), is thus broader than the criteria used by the Technical Evaluation Committee in determining the technical and cost scores of Academy Express and ONE Bus.

As already noted, the Board has broad discretionary authority to reject any proposal when it determines "it is in the public interest to do so," N.J.S.A.

20

27:25-11(c), and can consider any factor it "deems to be in the public interest," N.J.A.C. 16:85-2.3(a)(7). Under that broad authority, NJ Transit could certainly consider the qui tam action and determine it was in the public interest to reject a proposal from a carrier that had only weeks before entered into a multi-million-dollar settlement with the State in a massive fraud case involving the same routes covered by these contracts. See Keyes Martin & Co. v. Dir., Div. of Purchase & Prop., 99 N.J. 244, 262 (1985) (upholding Director's rejection of a bid "in the public interest" based on an appearance of wrongdoing attributable to a possible conflict of interest). Understanding we consider only a motion for stay pending appeal, we see nothing untoward at this point, and certainly nothing approaching a gross abuse of discretion, in the Board determining a contract with Academy Express immediately on the heels of the settlement agreement was not in the public interest nor most advantageous to NJ Transit given Academy's policies and procedures to protect against future fraud had only been submitted three business days before the meeting and not yet vetted by the agency.

Moreover, Academy Express has offered nothing to suggest the Board should not have considered its record of performance and integrity based on past performance in determining whether it was a responsible carrier. See N.J.A.C. 16:85-3.11(b); N.J.A.C. 16:72-1.4(a)(3),(4). Under the "contracting

21

out" regulations, the corporation "shall" consider the "adequacy of performance by a carrier or its affiliates under other contracts or leases with NJ Transit." N.J.A.C. 16:85-2.3(a)(4). Thus, NJ Transit could consider that No. 22 Hillside, Academy Express's affiliate, was alleged in the settled qui tam suit to have submitted fraudulent reports of missed trips over the course of several years, defrauding NJ Transit of millions of dollars and stranding passengers waiting for buses on the very same routes at issue in these contracts. See N.J.A.C. 16:85-2.3(a)(4).

We agree with NJ Transit that Academy Express's efforts to distance itself from No. 22 Hillside and the qui tam action in its proposal ring somewhat hollow in view of its participation in the settlement agreement that followed. Leaving aside the individual Academy Express identified as the person responsible for the "day to day" operation of the bus service (Rosario), and its vice-president and COO (Scullin) were two of only three individual defendants contributing to the monetary settlement with the State, Academy Express represented in its proposal it had been named a co-defendant in the qui tam action against an "affiliated entity" it did not identify based solely on the State's "naked assertion that the Academy Companies are operated as a single legal entity," while at the same time claiming it had "operated" the Hudson and North Hudson service from 1999 to 2021, which, of course, included the bus

routes at issue in the qui tam action for which its affiliate, No. 22 Hillside, held the contract.

In sum, Academy Express's claim that the rejection of its proposal was based on "media optics" does not meet the standard of clear and convincing proof of likelihood of success on the merits measured against the broad discretion vested in the NJ Transit Board and the knowledge our public bidding statutes "exist 'for the benefit of the taxpayers and are construed as nearly as possible with sole reference to the public good,'" with the object of "'guard[ing] against favoritism, improvidence, extravagance and corruption.'" Barrick, 218 N.J. at 258 (quoting Keyes, 99 N.J. at 256). There is no irreparable harm to a disappointed bidder in not staying the award of a contract the bidder cannot show a reasonable likelihood of having been entitled to win.

Finally, we find no merit in Academy Express's claim that the Board's rejection of its proposal acted as a de facto debarment or suspension in violation of the settlement agreement. The agency's acceptance and consideration of Academy Express's proposal demonstrates convincingly it was not barred from bidding on contracts with NJ Transit. Further, the Board did not bar or suspend Academy from submitting future proposals — it rejected this proposal because, among other reasons, the contract award on the RFP followed too close on the settlement, thereby depriving NJ Transit from

23

any assurance the extensive policies and procedures Academy Express and its affiliates had agreed to develop, put in place and arrange to be independently monitored to ensure NJ Transit was not again defrauded and riders left waiting for buses that never come, were in accord with the agreement and sufficient to serve their purposes.

The motion for stay pending appeal is denied. Our April 29, 2022 temporary stay pending disposition of the motion is dissolved. The clerk's office shall issue a scheduling order.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION